**2023 IL 128316**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128316)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
SHAUN N. TAYLOR, Appellant.

*Opinion filed May 18, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Shaun N. Taylor was convicted of attempted first degree murder of a peace officer and was sentenced to 30 years' imprisonment, plus an additional 20 years' imprisonment for using a firearm during the commission of the offense. The Appellate Court, Third District, affirmed defendant's conviction and sentence. 2022 IL App (3d) 190281. This court allowed defendant's petition for leave to

appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021). For the following reasons, we affirm the appellate court's judgment.

¶ 2                                    FACTS

¶ 3        On October 15, 2017, Illinois State Trooper Andrew Scott stopped defendant on Interstate 80 due to an obstructed windshield. Scott approached defendant's vehicle, identified himself as an Illinois State Trooper, and informed defendant that he was going to give him a warning. While Scott was preparing the warning, another officer arrived with a canine unit. That officer walked the canine around defendant's vehicle, and the canine alerted. Scott and the other officer asked defendant to exit his car. Defendant refused and sped off.

¶ 4        Defendant exited the interstate at the first available exit and ultimately parked his vehicle on a country road. Defendant then grabbed two weapons that he was carrying in his vehicle, an AR-15, semiautomatic rifle and a .40-caliber handgun. Defendant took up a hidden position in a cornfield directly across from his vehicle. Scott found defendant's vehicle shortly thereafter but did not approach the vehicle because he could see the vehicle was not occupied. Scott parked his squad car approximately 60 yards from defendant's vehicle, with the front of his squad car facing the front of defendant's vehicle. Scott exited his squad car and moved to a spot behind it. Defendant then fired 23 shots in Scott's direction with the AR-15 rifle. Scott was unharmed. Law enforcement officers then pursued defendant, who surrendered several hours later.

¶ 5        Defendant was charged with one count of attempted first degree murder of a peace officer in the course of performing his official duties (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) and one count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(3)). Prior to defendant's trial, the trial court appointed Dr. Kirk Witherspoon, a clinical psychologist, to examine defendant. Dr. Witherspoon examined defendant on two occasions to determine whether defendant could raise the defense of not guilty by reason of insanity, defendant could raise the mitigation of guilty but mentally ill, and defendant was fit to stand trial.

¶ 6        Dr. Witherspoon's diagnosis of defendant was that defendant suffered from posttraumatic stress disorder. Dr. Witherspoon found defendant to be fit to stand

trial and further found that defendant did not meet the criteria for a defense of not guilty by reason of insanity. However, Dr. Witherspoon opined that if defendant was convicted, the presumption of guilty but mentally ill seemed applicable. Dr. Witherspoon also filed an addendum to his psychological evaluations. The addendum was based upon Dr. Witherspoon's review of records that defense counsel was able to obtain from a 2007 psychiatric hospitalization of defendant. Dr. Witherspoon's addendum stated that the data associated with defendant's 2007 brief hospitalization did not appear significant or sufficient to alter Dr. Witherspoon's recommendations that defendant was not eligible for a not guilty by reason of insanity plea but that the court could consider a guilty but mentally ill finding if defendant was found guilty.

¶ 7        Dr. Witherspoon also sent defense counsel a handwritten note stating:

"Mr. Taylor's is a borderline case. I do not think he meets the threshold of [not guilty by reason of insanity]. However, if his parents can afford it, you may wish to seek a second opinion. If so, I can give you the names of a couple of other good psychologists who can do this work."

¶ 8        Defendant then filed a motion requesting the appointment of another expert, at the State's expense, to render a second opinion concerning whether defendant could raise a not guilty by reason of insanity defense. In support of his request, defendant referenced Dr. Witherspoon's handwritten note to defense counsel. The trial court denied defendant's motion, noting that, in his report, Dr. Witherspoon did not limit or qualify his opinion in any way. The trial court also noted that he had seen Dr. Witherspoon make recommendations to the court on previous occasions recommending that the court appoint another expert. Further, the handwritten note did not recommend that the court appoint another expert. Rather, the note simply stated that, if defendant wanted to spend the money, he could talk to someone else. The trial court held that defendant did not show the need for the appointment of a second expert at public expense.

¶ 9        Defense counsel then asked the court if it would be willing to entertain a renewed motion if counsel could secure a firmer recommendation from Dr. Witherspoon. The trial court agreed that, if Dr. Witherspoon filed another addendum to his report, the court would consider that addendum. Further, in the event defense counsel was able to secure a firmer recommendation from Dr.

Witherspoon, the trial court told defense counsel that he could set the matter for hearing and call Dr. Witherspoon to testify. No further recommendations or evaluations from Dr. Witherspoon were filed.

¶ 10   Defendant's case then proceeded to a jury trial, where defendant was found guilty of both charges. Because defendant was charged and convicted of attempted first degree murder of a peace officer in the course of performing his official duties, defendant was subject to a sentence between 20 and 80 years' imprisonment (*id.* § 8-4(c)(1)(A)), rather than the sentencing range of 6 to 30 years' imprisonment for attempt to commit first degree murder (*id.* § 8-4(c)(1); 730 ILCS 5/5-4.5-25 (West 2016)).

¶ 11   At defendant's sentencing hearing, the trial court asked the parties whether the 20-year firearm sentencing enhancement in section 8-4(c)(1)(C) of the Criminal Code of 2012 (Code) (720 ILCS 5/8-4(c)(1)(C) (West 2016)) applied to defendant's case, given that defendant also was subject to the higher sentencing range for the attempted murder of a peace officer set forth in section 8-4(c)(1)(A). The State argued that the firearm sentencing enhancement applied, while defendant argued that the firearm sentencing enhancement would constitute an improper double enhancement.

¶ 12   Citing *People v. Tolentino*, 409 Ill. App. 3d 598 (2011), and *People v. Jackson*, 2018 IL App (1st) 150487, the trial court found that the 20-year firearm enhancement did apply. Accordingly, the trial court sentenced defendant to 30 years' imprisonment for the attempted murder of a peace officer in the course of performing his official duties, plus an additional 20 years for discharging a firearm in the attempted murder, for a total of 50 years' imprisonment. The trial court then merged the aggravated discharge of a firearm conviction into the attempted murder conviction.

¶ 13   Defendant filed a motion to reconsider sentence, again arguing that imposition of the firearm enhancement constituted an improper double enhancement. At a hearing on defendant's motion, the trial court noted a conflict in the appellate court over whether imposition of a firearm enhancement to a defendant subject to an enhanced status-based sentence under subsection (A) constituted an improper double enhancement. The trial court agreed with the cases finding the firearm enhancement addressed different policy concerns than the subsection (A) status-

- 4 -

based sentence, so that the firearm enhancement in this case did not constitute an improper double enhancement. The trial court therefore denied defendant's motion to reconsider sentence.

¶ 14    Defendant appealed, arguing that the trial court abused its discretion in denying his request for appointment of a second expert to determine whether defendant was eligible for a finding of not guilty by reason of insanity. Defendant also argued that the trial court's imposition of the 20-year firearm enhancement constituted an improper double enhancement, because the trial court also imposed a status-based sentence for the attempted murder of a peace officer in the course of performing his official duties.

¶ 15    The appellate court affirmed (2022 IL App (3d) 190281, ¶ 42) with one justice dissenting on the issue of double enhancement (*id.* ¶ 45 (Lytton, J., concurring in part and dissenting in part)). The appellate court first unanimously held that the trial court did not abuse its discretion in denying defendant's request for a second expert to determine whether defendant was insane at the time of the offense. *Id.* ¶ 21 (majority opinion); *id.* ¶ 45 (Lytton, J., concurring in part and dissenting in part). The appellate court noted that the United States Supreme Court in *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), established that,

> " 'when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.' " 2022 IL App (3d) 190281, ¶ 42 (majority opinion) (quoting *Ake*, 470 U.S. at 83).

The appellate court also stated that a defendant's right to a psychiatric exam is protected by section 115-6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-6 (West 2016)).

¶ 16    The appellate court found that the requirements of *Ake* had been met in this case. Because defendant was indigent and his sanity was to be a significant issue at trial, the State was required to, and did, provide defendant with access to a psychiatric evaluation. The trial court appointed Dr. Witherspoon at the State's expense to determine whether defendant was sane at the time he committed the

offense. Dr. Witherspoon conducted a thorough evaluation of defendant's mental condition and determined that defendant was not insane when he fired on Officer Scott. The appellate court concluded that the appointment of Dr. Witherspoon and his evaluation of defendant fulfilled the requirements of *Ake*. 2022 IL App (3d) 190281, ¶ 19.

¶ 17    The appellate court rejected defendant's claim that he was entitled to a second evaluation based upon Dr. Witherspoon's handwritten note to defense counsel, which described defendant's case as " 'borderline.' " *Id.* ¶ 21. The appellate court stated that, given the information submitted by Dr. Witherspoon after examining defendant, there was no substantial value in ordering a second evaluation. *Id.* The appellate court found no abuse of discretion in the trial court's failure to approve funds for a second psychiatric evaluation. *Id.*

¶ 18    The appellate court next addressed defendant's claim that the trial court erred in applying both the status-based sentence under section 8-4(c)(1)(A) of the Code and the 20-year firearm enhancement under section 8-4(c)(1)(C) of the Code. *Id.* ¶ 23. Defendant argued that, once the trial court applied the status-based sentencing range in subsection (A), application of other subsections of the attempted first degree murder statute would constitute an improper double enhancement. *Id.* Defendant noted the split of authority on the issue and argued that the court should follow the case law finding that a court cannot impose a firearm enhancement once a status-based sentence is imposed. *Id.* ¶ 24.

¶ 19    The statute at issue provides:

> "§ 8-4. Attempt.
>
> (a) Elements of the offense.
>
> A person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense.
>
> * * *
>
> (c) Sentence

- 6 -

A person convicted of attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense defined in Section 33A-2 of this Code:

(1) the sentence for attempt to commit first degree murder is the sentence for a Class X felony, except that

(A) an attempt to commit first degree murder when at least one of the aggravating factors specified in paragraphs (1), (2), and (12) of subsection (b) of Section 9-1 is present is a Class X felony for which the sentence shall be a term of imprisonment of not less than 20 years and not more than 80 years;

(B) an attempt to commit first degree murder while armed with a firearm is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court;

(C) an attempt to commit first degree murder during which the person personally discharged a firearm is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court;

(D) an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court; and

(E) if the defendant proves by a preponderance of the evidence at sentencing that, at the time of the attempted murder, he or she was acting under a sudden and intense passion resulting from serious provocation by the individual whom the defendant endeavored to kill, or another, and, had the individual the defendant endeavored to kill died, the defendant would have negligently or accidentally caused that death, then the sentence for the attempted murder is the sentence for a Class 1 felony[.]" 720 ILCS 5/8-4 (West 2016)).

¶ 20       Defendant's sentence falls under subsection (A) because the aggravating factor specified in section 9-1(b)(1) of the Code (*id.* § 9-1(b)(1)) was present. Section 9-1(b)(1) provides that an aggravating factor in the homicide statute is when

> "(1) the murdered individual was a peace officer or fireman killed in the course of performing his official duties, to prevent the performance of his official duties, or in retaliation for performing his official duties, and the defendant knew or should have known that the murdered individual was a peace officer or fireman." *Id.*

¶ 21       The appellate court noted the split of authority on the issue of double enhancement. 2022 IL App (3d) 190281, ¶ 24. One line of case law found that section 8-4(c) should be read disjunctively, precluding application of the firearm enhancement to a status-based sentence under subsection (A). *Id.* ¶ 29. The other line of cases found that the 20- to 80-year sentence set forth in subsection (A) was a baseline sentence, not an enhancement, so that application of the firearm enhancement to the status-based sentence was not an improper double enhancement. *Id.* ¶ 33.

¶ 22       The appellate court agreed with the cases holding that subsection (A) was a baseline sentence in cases involving status-based offenses, such as the attempted murder of Officer Scott in this case, so that subsections (B), (C), or (D) also applied when a firearm was used in that offense. *Id.* ¶ 39. The appellate court therefore found no error in the defendant's sentence.

¶ 23       The partial dissent disagreed with this portion of the appellate court's analysis. *Id.* ¶ 45 (Lytton, J., concurring in part and dissenting in part). The dissent believed that the semicolons between the subsections of section 8-4(c) indicated that each exception must be read disjunctively. *Id.* ¶ 50. The dissent found support for his analysis in the analysis of the courts in *People v. Phagan*, 2019 IL App (1st) 153031, and *People v. Holley*, 2019 IL App (1st) 161326. 2022 IL App (3d) 190281, ¶ 56. The dissent would vacate defendant's 20-year firearm enhancement and would remand the cause for resentencing. *Id.* ¶ 60.

¶ 24                                    ANALYSIS

¶ 25    In this court, defendant again challenges the trial court's denial of his request for a second expert witness, as well as the imposition of the 20-year firearm sentencing enhancement.

¶ 26                                A. Expert Witness

¶ 27    This court reviews a trial court's denial of a motion for expert witness for an abuse of discretion. See *People v. Page*, 193 Ill. 2d 120, 153 (2000); *People v. Lawson*, 163 Ill. 2d 187, 230 (1994).

¶ 28    Defendant argues that the trial court abused its discretion in denying his request for a second psychiatric evaluation to determine whether he was not guilty by reason of insanity. Defendant argues that a second evaluation was necessary based upon Dr. Witherspoon's handwritten note to defense counsel stating that defendant's case was borderline. Citing *McWilliams v. Dunn*, 582 U.S. 183 (2017), defendant argues that *Ake* requires not only an appropriate examination but also for the State to provide the defense with access to a competent psychiatrist who will also assist in the evaluation, preparation, and presentation of the defense.

¶ 29    Defendant asserts that, even if Dr. Witherspoon conducted an appropriate examination, Dr. Witherspoon could not have helped the defense evaluate, prepare, and present a defense, because Dr. Witherspoon's note that defendant's case was a borderline case rendered Dr. Witherspoon's opinion uncertain, necessitating the appointment of a second expert.

¶ 30    The State responds that defendant's constitutional rights were satisfied by the appointment of Dr. Witherspoon. We agree with the State. *Ake* held that a defendant is entitled to access to a competent psychiatrist when the defendant's sanity at the time of the offense is to be a significant factor at trial. *Ake*, 470 U.S. at 83. Access to a competent psychiatrist means that the psychiatrist will conduct an appropriate examination and will assist in the evaluation, preparation, and presentation of the defense. *Id. Ake* clarified that this did not mean an indigent defendant "has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id.*

¶ 31 Defendant does not argue that Dr. Witherspoon did not conduct an appropriate examination. Dr. Witherspoon conducted two psychological evaluations of defendant, and both times he opined that defendant did not meet the criteria for a defense of not guilty by reason of insanity. Dr. Witherspoon did believe that, if defendant was convicted, the guilty but mentally ill presumption could apply. Dr. Witherspoon also prepared an addendum to his psychological evaluation, after reviewing additional records obtained from a brief psychiatric hospitalization of defendant in 2007. The addendum stated that "[d]ata associated with [defendant's] prior brief hospitalization did not appear significant or sufficient enough to alter those recommendations previously shared."

¶ 32 Relying on *McWilliams*, defendant claims that he was entitled to the appointment of a second expert because Dr. Witherspoon did not assist in the evaluation, preparation, and presentation of the defense.

¶ 33 Defendant's reliance on *McWilliams* is misplaced. In *McWilliams*, the defendant was found competent to stand trial by a three-member panel of psychiatrists comprising the state of Alabama's "Lunacy Commission." *McWilliams*, 582 U.S. at 188. The defendant was convicted of capital murder, and the jury recommended the death penalty. *Id.* at 189. The case was then set for a judicial sentencing hearing. *Id.*

¶ 34 Five weeks before the sentencing hearing, defense counsel subpoenaed mental health records from the defendant's prison and filed a motion for neurological and neuropsychological testing of the defendant. *Id.* at 190. Dr. Goff, a neuropsychologist, was retained to examine the defendant. Dr. Goff filed his report two days before the defendant's sentencing hearing. *Id.* The day before the defendant's sentencing hearing, defense counsel received updated records from the state hospital, and on the morning of the hearing, defense counsel received subpoenaed records from the prison. *Id.* at 190-91.

¶ 35 At the defendant's sentencing hearing, defense counsel told the court that the late arrival of Dr. Goff's report and the records left him unable to present evidence that day and that he needed to have someone review the documents and offer a second opinion. *Id.* at 191. Defense counsel noted his own lack of expertise to review the records or to determine whether and how to challenge the reports and tests run by the state hospital and Lunacy Commission. *Id.* at 192. The trial court

denied defense counsel's motion, and the defendant ultimately was sentenced to death. *Id.* at 192-93. The Alabama reviewing courts rejected the defendant's claim that the state of Alabama had failed to provide him with his constitutionally required expert mental health assistance. *Id.* at 193-94.

¶ 36        The United States Supreme Court found that the defendant had been denied the mental health assistance required by *Ake*. *Id.* at 199. The Court assumed that the defendant had received the examination portion of *Ake*'s requirements when Dr. Goff examined the defendant. *Id.* However, *Ake*'s requirement that the defendant receive access to an expert who will assist in the evaluation, preparation, and presentation of the defense was not met. No expert helped the defense evaluate Dr. Goff's report, evaluate the defendant's extensive medical records, or translate that data into a legal strategy. No expert helped the defense prepare and present arguments to explain the defendant's alleged malingering or prepare for the direct or cross-examination of any witnesses. *Id.* The court concluded that the state of Alabama's provision of mental health assistance fell dramatically short of *Ake*'s requirements and therefore remanded the matter to the Eleventh Circuit Court of Appeals. *Id.* at 200.

¶ 37        Defendant claims that in this case, as in *McWilliams*, the need for a second opinion arose because in both cases the indigent defendants were entitled to obtain additional experts. According to defendant, the issue of sanity remained a significant issue in both his case and *McWilliams* after the initial expert expressed an uncertain or inconclusive opinion that the defendant was sane. The inconclusive opinions left each expert unable to effectively assist in the preparation and presentation of a plausible insanity defense. Defendant argues that, even if Dr. Witherspoon conducted an appropriate examination, Dr. Witherspoon could not have helped defendant evaluate, prepare, and present a defense, given his uncertainty concerning whether defendant was insane at the time he committed the offense.

¶ 38        We disagree with defendant's characterization of Dr. Witherspoon's opinion. Dr. Witherspoon conducted two evaluations of defendant, reviewed additional medical records, and consistently opined that defendant was not eligible for a not guilty by reason of insanity defense. Neither of Dr. Witherspoon's written evaluations indicated any equivocation concerning defendant's sanity for purposes

of trial, nor did his addendum. Even Dr. Witherspoon's note to defense counsel was unequivocal. Although the note stated that counsel might want to seek a second opinion if defendant's parents could afford it, Dr. Witherspoon also wrote, "*I do not think* he meets the threshold of [not guilty by reason of insanity]." (Emphasis added.) Nowhere in the record is there evidence that Dr. Witherspoon was uncertain about his conclusion that defendant was sane.

¶ 39     This case is distinguishable from *McWilliams*. In *McWilliams*, defense counsel received Dr. Goff's report and the defendant's medical records just prior to the defendant's sentencing hearing. *Id.* at 190-91. The trial court refused to continue the hearing to allow defense counsel additional time to review the materials for the hearing. *Id.* at 191-92. The sentencing hearing proceeded, and in response to the state of Alabama's argument that there were no mitigating circumstances, defense counsel stated that he could not respond to that remark because he was not a doctor and could not go through the medical records on his own. *Id.* at 192-93. The trial court then sentenced the defendant to death, finding no mitigating circumstances. *Id.* at 193. Under those circumstances, the Court found that the defendant was denied access to a competent psychiatrist who would assist in evaluation, preparation, and presentation of a defense, as required under *Ake*. *Id.* at 199.

¶ 40     Those circumstances are not present in this case. Defendant does not and cannot claim that he did not have assistance in reviewing defendant's medical records or in translating those records into a legal strategy. Dr. Witherspoon did help defendant evaluate, prepare, and present a defense. Dr. Witherspoon examined defendant on two occasions and reviewed defendant's medical records. Although Dr. Witherspoon did not find that defendant was not guilty by reason of insanity, Dr. Witherspoon suggested that defendant could be found guilty but mentally ill if he was convicted. This may not have been defendant's preferred defense, but defendant cannot say that Dr. Witherspoon did not help him evaluate, prepare, and present a defense.

¶ 41     Defendant also claims the appellate court erred in relying on section 115-6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-6 (West 2016)) to affirm the denial of defendant's motion for the appointment of a second expert. We need not address this claim, as the basis for the appellate court's ruling was its analysis of the requirements set forth in *Ake*. See 2022 IL App (3d) 190281, ¶¶ 17-20. The

appellate court simply noted that, in Illinois, a defendant's right of access to a psychiatric examination is protected by statute as well, citing section 115-6. *Id.* ¶ 18.

¶ 42    Accordingly, we find that Dr. Witherspoon's examinations and evaluations of defendant fulfilled the standards set forth in *Ake*. The trial court did not abuse its discretion in denying defendant's request for a second expert to examine defendant.

¶ 43                                B. Firearm Enhancement

¶ 44    Defendant next argues that his sentence should be vacated and the cause remanded for resentencing because his sentence constituted an improper double enhancement. Defendant argues that the dissent in this case is better reasoned and that the split in the appellate court should be resolved in favor of the cases finding that the status-based sentence in subsection (A) is a sentencing enhancement and that all the sentencing enhancements in section (c)(1) apply disjunctively.

¶ 45    When reviewing issues of statutory construction, this court's review is *de novo*. *People v. Kastman*, 2022 IL 127681, ¶ 29. A court's fundamental objective in addressing issues of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Newton*, 2018 IL 122958, ¶ 14. In determining the legislature's intent, a court "may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). In addition, we presume that, in enacting the statute, the legislature did not intend to produce absurd, inconvenient, or unjust results. *In re Estate of Wilson*, 238 Ill. 2d 519, 560 (2010).

¶ 46    With these principles in mind, we turn to the statute at issue. The first case to address the interplay of the status-based enhanced sentence in section 8-4(c)(1)(A) and the firearm enhancements in section 8-4(c)(1)(B), (C), and (D) was *People v. Douglas*, 371 Ill. App. 3d 21 (2007). In that case, the court considered whether the trial court was required to impose the 20-year firearm enhancement in addition to the defendant's 35-year sentence for the attempted murder of a peace officer engaged in the course of performing his official duties. *Id.* at 23. In considering the sentencing issue, the Appellate Court, First District, first found that subsection (A) was not a sentencing enhancement but, rather, was a baseline sentence. *Id.* at 26.

The court stated that the sentencing enhancements were contained in subsections (B), (C), and (D) of the statute. The court declined to impose the 20-year sentencing enhancement, however, finding that in creating the subsection (A) Class X offense carrying a 20- to 80-year sentence, "the legislature well might have believed it was authorizing trial judges to impose severe sentences. That is, the sentence already is enhanced, without the need for further provision," because Class X offenses ordinarily carry a sentence of 6 to 30 years. *Id.*

¶ 47     The Appellate Court, First District, next addressed the issue in *People v. Tolentino*, 409 Ill. App. 3d 598 (2011). The defendant in that case was sentenced to 20 years' imprisonment for the attempted murder of a peace officer under subsection (A), along with a 20-year firearm enhancement under subsection (C). *Id.* at 599. Citing *Douglas*, the defendant argued on appeal that the plain, unambiguous statutory language prohibited application of the firearm enhancement to his attempted first degree murder of a peace officer conviction. *Id.* at 605.

¶ 48     The *Tolentino* court agreed with *Douglas* that subsection (A) contained no sentencing enhancements and that the sentencing enhancements were contained in subsections (B), (C), and (D). *Id.* at 606. The court, however, disagreed with the *Douglas* court's statement that the legislature " 'might have believed' " subsection (A) presented a built-in enhancement without the need for further provision. *Tolentino* found that portion of the *Douglas* opinion to be speculative *dicta* and declined to follow it. *Id.* (quoting *Douglas*, 371 Ill. App. 3d at 26). The court found that the statute did not expressly prohibit use of the firearm enhancements when sentencing under subsection (A). *Id.* The court agreed with the State that the public policy concerns underlying subsection (A) differed from the concerns underlying the firearm enhancement provisions. *Id.* The court stated that

> "[a]llowing a trial court to add a firearm enhancement to a sentence given pursuant to subsection (A) would address the legislature's desire both to deter intentional killings of peace officers and to discourage the use of firearms in the commission of felonies." *Id.*

Therefore, the trial court did not err in applying the firearm enhancement to the defendant's sentence under subsection (A). *Id.*

- 14 -

¶ 49    The Appellate Court, First District, reaffirmed this construction of the statute in *People v. Smith*, 2012 IL App (1st) 102354, and *Jackson*, 2018 IL App (1st) 150487. *Smith* also found that the *Douglas* analysis was not persuasive, finding that, just as the firearm sentencing enhancements in subsections (B), (C), and (D) must be added to the 6- to 30-year sentencing range, they must also be added to the higher 20- to 80-year sentencing range. *Smith*, 2012 IL App (1st) 102354, ¶ 114. *Smith* noted that

"a defendant may attempt to murder a police officer by many means other than a firearm, and where subsection (c)(1)(A) makes no reference to firearms, the court should not speculate that any concerns about the use of firearms in perpetrating this offense have already been considered by the legislature and are accounted for by the 20- to 80-year sentencing range." *Id.*

¶ 50    The *Jackson* court also disagreed with the *Douglas* court's reasoning. *Jackson*, 2018 IL App (1st) 150487, ¶ 54. *Jackson* stated that the most natural reading of subsection (A) was that it set out an enhanced baseline sentence for the attempted murder of a peace officer and that subsections (B), (C), or (D) could apply based upon the facts of the case. *Id.* ¶ 52. The court acknowledged the legislature's use of a semicolon to punctuate subsection (A) and noted that semicolons typically precede a related but separate concept. *Id.* ¶ 51. The semicolons suggested that the subsections in section (c)(1) must be read disjunctively. *Id.* Nonetheless, the *Jackson* court believed that the legislature did not use semicolons to signify a disjunctive intent. *Id.*

¶ 51    *Jackson* also noted that a 2010 amendment to the statute added subsection (E), changing the period at the end of subsection (D) into a semicolon and adding the word "and" before the text of subsection (E). *Id.* The court therefore concluded that the use of the word "and" at the end of the series of subsections, each ending in a semicolon, signaled that the legislature intended for the exceptions in subsection (c)(1) to apply conjunctively, not disjunctively. *Id.*

¶ 52    When faced with the issue again in 2019, the Appellate Court, First District, disagreed with *Tolentino*, *Smith*, and *Jackson*. *Phagan*, 2019 IL App (1st) 153031. *Phagan* noted that the courts in *Douglas*, *Tolentino*, and *Smith* addressed the version of the statute prior to the statute's 2010 amendment. *Id.* ¶ 84. Further, although the *Jackson* court addressed the amended statute, containing subsection

(E), the *Phagan* court disagreed with *Jackson*'s analysis. *Id. Phagan* noted that subsections (A) and (E), the two exceptions to the base Class X sentencing range for attempted first degree murder, could not exist together. *Id.* ¶ 99. If a defendant attempted the aggravated form of first degree murder, he could not have attempted first degree murder plus a mitigating circumstance. *Id.* For that reason, the *Jackson* court erred in reading subsections (A) and (E) conjunctively. *Id.* ¶ 100.

¶ 53        *Phagan* also found an additional absurdity in reading the subsections of section (c)(1) conjunctively, stating that a conjunctive reading would allow trial courts to impose the 15-year, 20-year, and 25-year to natural life firearm enhancements on top of one another, thus sanctioning improper multiple enhancements. *Id.* ¶ 101. *Phagan* therefore held that the attempted first degree murder statute did not allow for the imposition of a 20-year firearm enhancement on top of the imposition of the extended sentencing range set forth in subsection (A). *Id.* ¶ 107.

¶ 54        Another panel of the Appellate Court, First District, similarly departed from the *Tolentino*, *Smith*, and *Jackson* decisions and held that the trial court had erred in applying the 25-year to natural life sentencing enhancement in subsection (D) to the defendant's subsection (A) sentence for the attempted murders of two peace officers. *Holley*, 2019 IL App (1st) 161326. The court found that the statute set forth a sentence for attempted murder, a Class X offense, with a baseline sentence of 6 to 30 years' imprisonment. *Id.* ¶ 32. That baseline sentence was subject to modification in one of the five ways set forth in subsections (A) through (E). *Id. Holley* stated that nothing in the structure of the statute or the statutory language suggested that the sentencing court was to apply more than one of those exceptions in a particular case. *Id.* Further, to the extent the statute was ambiguous, any ambiguity would be construed in favor of the defendant pursuant to the rule of lenity. *Id.*

¶ 55        The instant decision is the first case outside of the Appellate Court, First District, to address the issue of whether the firearm sentencing enhancements could be applied to a sentence imposed under subsection (A). As discussed, the appellate court in this case disagreed with the reasoning of the *Phagan* and *Holley* courts and found that subsection (A) was a base sentencing range for a status-based offense, rather than an enhancement, so that a trial court was not prohibited from also imposing a firearm enhancement to that sentence. We further note that, following

the appellate court's decision in this case, the First District again addressed the issue and disagreed with the *Phagan* and *Holley* decisions. *People v. Pledger*, 2022 IL App (1st) 200094-U. The *Pledger* court analyzed the statute and reached the same conclusion as the appellate court in this case, that subsection (A) created a baseline sentence, which was subject to modification in one of four ways set forth in subsections (B) through (E). *Id.* ¶ 31.

¶ 56     Noting the conflict in the appellate court, defendant argues that this court should resolve that conflict in favor of the decisions finding that the sentence enhancements apply disjunctively rather than conjunctively, so that defendant's sentence should be vacated and the cause remanded for resentencing. Following the reasoning of those courts, defendant argues that the subsections in section 8-4(c)(1) apply disjunctively because (1) the plain language of the attempt statute shows that each sentence enhancement is an exception, with its own sentencing scheme, to the baseline Class X sentencing range of 6 to 30 years for attempted murder, (2) each sentence enhancement is a distinct and aggravated crime under the plain language of the statute and the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and (3) the legislature's use of semicolons to separate the subsections indicates the subsections are to be read disjunctively.

¶ 57     The State responds that the plain language and purpose of section 8-4 require application of the firearm enhancement to any attempted murder that constitutes a Class X felony, including the defendant's attempted murder of a peace officer. Section (c)(1) provides that "the sentence for attempt to commit first degree murder is the sentence for a Class X felony." The statute then lists four exceptions where the attempt to commit first degree murder is still a Class X felony, but the sentencing range is not 6 to 30 years' imprisonment. The statute contains a final exception when the attempted murder is not a Class X felony.

¶ 58     We agree with the State and the decisions finding that the firearm enhancements in subsections (B) through (D) can apply to a sentence imposed under subsection (A). The appellate dissent in this case and the opinions in cases finding that the firearm sentencing enhancements do not apply to a sentence under subsection (A) place great emphasis on the use of semicolons in the statute. We decline to elevate form over substance, however, and instead look to the plain language of the statute

to determine whether the subsections of section 8-4(c)(1) are disjunctive or conjunctive.

¶ 59    In interpreting a statute, words and phrases in a statute should not be considered in isolation but should be interpreted in light of other relevant statutory provisions and the statute as a whole. *People v. Jackson*, 2011 IL 110615, ¶ 12. Considering the statutory provisions and the statute as a whole, we first note that subsection (c)(1) provides that "*the sentence* for attempt to commit first degree murder is the sentence for a Class X felony." (Emphasis added.) 720 ILCS 5/8-4(c)(1) (West 2016). Subsection (A) provides that "an attempt to commit first degree murder when at least one of the aggravating factors *** of Section 9-1 is present is a Class X felony for which *the sentence* shall be a term of imprisonment of not less than 20 years and not more than 80 years." (Emphasis added.) *Id.* § 8-4(c)(1)(A).

¶ 60    Subsections (B), (C), and (D) then set forth the firearm enhancements. Subsection (B) states that an attempt to commit first degree murder while armed with a firearm "is a Class X felony for which 15 years *shall be added to the term of imprisonment imposed by the court*." (Emphasis added.) *Id.* § 8-4(c)(1)(B). Similarly, subsection (C) provides that "20 years *shall be added to the term of imprisonment imposed by the court*" when the defendant "personally discharged a firearm." (Emphasis added.) *Id.* § 8-4(c)(1)(C). Subsection (D) provides that "25 years or up to a term of natural life *shall be added to the term of imprisonment imposed by the court*" when the defendant "personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person." (Emphasis added.) *Id.* § 8-4(c)(1)(D).

¶ 61    It is clear from the preceding language, given its plain and ordinary meaning, that subsection (c)(1) and subsection (A) set forth baseline sentences for the offense of attempted first degree murder, *i.e.*, the "term of imprisonment imposed by the court," with subsection (A) imposing a longer baseline sentence based upon one of the aggravating factors specified in subsections (1), (2), and (12) of section 9-1(b). Subsections (B), (C), and (D) then provide that the firearm enhancements of 15, 20, or 25 years to natural life "shall be added to the term of imprisonment imposed by the court."

¶ 62    This interpretation of the statute is consistent with the reason for the law, the problems sought to be remedied, and the purposes to be achieved. See *Jackson*,

2011 IL 110615, ¶ 12. As the appellate court noted, subsection (A)'s enhanced status-based sentence and the firearm enhancement subsections address separate evils. The appellate majority correctly observed:

"The legislature has been explicit in its intent to punish attempted first degree murder of a peace officer more severely than the same attempt on an ordinary citizen. Moreover, the legislature has clearly expressed its intent to punish offenses perpetrated with firearms with sentencing enhancements." 2022 IL App (3d) 190281, ¶ 34.

That the subsections address separate evils is evident when considering that the subsections do not always overlap. For example, a defendant may attempt to commit the first degree murder of a peace officer or fireman with a weapon other than a firearm, so that only the legislature's intent to punish the attempted murder of a peace officer more severely would apply.

¶ 63        Moreover, as the State points out, the statutory interpretation embraced by the dissent and the courts in *Phagan* and *Holley* would be contrary to the reasons for the law, the problems sought to be remedied, and the purposes to be achieved. Under that interpretation, a defendant who personally discharges a firearm in an attempt to kill, for example, an accountant would be subject to a mandatory minimum term of 26 years: the 6-year mandatory minimum for attempted murder under subsection (c)(1), plus the 20-year firearm enhancement in subsection (C). If the defendant committed the exact same act against a peace officer or fireman in the course of performing his official duties, the defendant would be subject to a mandatory minimum sentence of 20 years under subsection (A). This result is contrary to the legislature's express intent to punish the status-based offense in subsection (A) more severely.

¶ 64        We also disagree with the *Phagan* court's analysis finding support for its holding in the fact that subsections (A) and (E) could not be read conjunctively, because a defendant who attempted the first degree murder of a peace officer could not also have attempted first degree murder plus a mitigating circumstance. 2019 IL App (1st) 153031, ¶ 99. *Phagan* found such an "impossible reading of the statutory scheme as a whole" would lead to an absurd result. *Id.* ¶ 100. *Phagan* also believed that reading the statute conjunctively would allow the trial court to impose

the 15-year, 20-year, and 25-year to natural life subsections on top of one another. *Id.* ¶ 101.

¶ 65    We disagree. As the appellate court in this case found, subsection (E) is not an enhancement but rather sets forth a mitigating circumstance reducing the baseline sentence in subsection (c)(1). That the mitigating circumstance does not apply to subsection (A) is of no consequence. The plain language of the statute establishes that subsection (A) sets forth a basis to increase the sentence in subsection (c)(1), while subsection (E) sets forth a basis to decrease that sentence. Subsections (B) through (D) set forth a basis to increase the sentences in subsection (c)(1) and subsection (A) when a firearm is involved in the offense.

¶ 66    There also is no danger of an impermissible double enhancement in our interpretation of the statute. A trial court could not simultaneously impose the 15-year, 20-year, and 25-year to natural life subsections under our reading of the statute because double enhancements are prohibited unless the legislature has clearly intended such a penalty and has clearly expressed that intention in the statute. *People v. Sharpe*, 216 Ill. 2d 481, 530 (2005). The legislature has not clearly expressed that intention in section 8-4, so simultaneous imposition of the firearm enhancements would be prohibited multiple enhancements.

¶ 67    Defendant also argues that the decision in *Apprendi*, 530 U.S. 466, confirms that the four sentencing enhancements of the attempt statute are independent crimes, each with its own sentencing scheme, because each enhancement is based on a different *Apprendi* element.

¶ 68    As the State argues in response, the *Apprendi* decision is inapposite. *Apprendi* held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory range must be proven by the factfinder beyond a reasonable doubt. 530 U.S. at 483-84. Defendant does not argue that the State did not prove beyond a reasonable doubt that defendant committed attempted first degree murder, that the victim was a peace officer, or that defendant personally discharged a firearm during the commission of the attempted first degree murder. Defendant instead argues that, because each fact that alters the sentencing range in subsection (c)(1) is an element that must be proven to the factfinder beyond a reasonable doubt, then each of those provisions must constitute a distinct crime that cannot be combined to require a greater sentencing range. There is no merit to this

argument, as *Apprendi* does not prohibit combining multiple facts, proven beyond a reasonable doubt, to increase the sentencing range applied to the defendant's conduct.

¶ 69 Finally, we find no merit to defendant's argument that the legislative history of section 8-4 requires reversal of the appellate court's opinion. In support of this argument, defendant points to the fact that the legislature added subsection (E) to section 8-4 following the appellate court's *Douglas* decision. In doing so, the legislature did not amend the sentence enhancement provisions of the statute, suggesting that the legislature viewed the *Douglas* court's interpretation of the statute as correct. As the State points out, however, the legislature inserted the word "and" to separate the subsections when it added subsection (E) to the statute. The State asserts this amendment also could be construed as correcting the *Douglas* court's interpretation of the statute as disjunctive rather than conjunctive. We agree with the State that the legislature's amendment of the statute to add subsection (E) does not indicate a clear legislative response to the *Douglas* decision. To the extent that the decisions in *Douglas*, *Phagan*, and *Holley* held that section 8-4(c)(1)'s subsections cannot be read conjunctively, they are hereby overruled.

¶ 70 In sum, we find the plain language of section 8-4 sets forth a baseline sentence for a Class X felony, as well as an increased baseline sentence for a Class X felony involving one of the aggravating factors specified in the statute. The statute also sets forth a mitigating circumstance that may apply to the baseline sentence in subsection (c)(1), along with firearm enhancements that may apply to the baseline sentences in subsections (c)(1) and (c)(1)(A). It follows that defendant was properly sentenced to a sentence of 30 years' imprisonment under subsection (A) of the statute, plus an additional 20 years' imprisonment under subsection (C), for discharging a firearm in the attempted murder of Officer Scott.

¶ 71                                          CONCLUSION

¶ 72 The trial court did not abuse its discretion in denying defendant's motion for appointment of a second expert at the public's expense. The defendant was not denied his right to the mental health assistance required by *Ake*. Dr. Witherspoon fulfilled *Ake*'s constitutional requirements in examining defendant and assisting in the evaluation, preparation, and presentation of defendant's defense. The defendant

also was not subject to an improper double enhancement when he received a 20-year sentence under the firearm enhancement of subsection (C) of section 8-4(c)(1), in addition to his 30-year sentence under subsection (A) of the statute. We therefore affirm defendant's conviction and sentence.

¶ 73  Judgments affirmed.