NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230834-U

NOS. 4-23-0834, 4-23-0835 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JONATHAN S. CLINE, | ) | Nos. 20CF362 |
| Defendant-Appellant. | ) | 20CF817 |
| | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

---

JUSTICE LANNERD delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court (1) affirmed the trial court's denial of defendant's motion to withdraw his guilty plea because defendant failed to establish his plea counsel was ineffective and (2) vacated defendant's sentences because the court improperly considered a factor inherent in the offense of being an armed habitual criminal as an aggravating factor at sentencing.

¶ 2    In March 2021, defendant, Jonathan S. Cline, entered a partially negotiated plea agreement. Defendant pled guilty to one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)) and one count of theft of property with a value exceeding $500 and not exceeding $10,000 (theft over $500) (*id.* § 16-1(a)(1)(A)). In exchange for defendant's guilty plea, the State agreed to dismiss eight other charges. The trial court sentenced defendant to 10 years' imprisonment for being an armed habitual criminal and 4 years' imprisonment for theft over $500,

to be served consecutively. Defendant timely filed an amended motion to reconsider his sentence or withdraw his guilty plea, which the court denied.

¶ 3        On appeal, defendant contends the trial court erred (1) in denying his motion to withdraw his guilty plea because plea counsel was ineffective for failing to advise defendant he would be required to serve at least 85% of his sentence for being an armed habitual criminal (see 730 ILCS 5/3-6-3(2) (West 2020)) and (2) by improperly considering a factor inherent in the offense of being an armed habitual criminal as an aggravating factor at defendant's sentencing. For the following reasons, we vacate defendant's sentences and remand for a new sentencing hearing.

¶ 4                                    I. BACKGROUND

¶ 5                          A. The Charges and the Guilty Plea

¶ 6        Defendant was charged with multiple offenses in five cases: McLean County case Nos. 20-CF-206, 20-CF-362, 20-CF-817, 20-DT-203, and 20-TR-4534. In case No. 20-CF-362, defendant was charged with being an armed habitual criminal (count I), unlawful possession of weapon by felon (count II) (720 ILCS 5/24-1.1(a) (West 2020)), and unlawful possession of methamphetamine (count III) (720 ILCS 646/60(a) (West 2020)). Count I specifically alleged defendant committed the offense of being armed habitual criminal by "knowingly possess[ing] a .22 caliber rifle firearm after having been convicted of a forcible felony offense of burglary *** and convicted of a forcible felony offense of robbery." In case No. 20-CF-817, he was charged with burglary (count I) (720 ILCS 5/19-1(a) (West 2020)), theft over $500 (count II), three additional counts of theft (counts III through V) (*id.* § 16-1(a)(1)(A), (a)(4)(A)), unlawful possession of hypodermic syringes (count VII) (720 ILCS 635/1 (West 2020)), and unlawful possession of a controlled substance (count VI) (720 ILCS 570/402(c) (West 2020)).

¶ 7       On March 4, 2021, the parties advised the trial court they had reached a partially negotiated plea agreement. Pursuant to the agreement, defendant would plead guilty to count I in case No. 20-CF-362, being an armed habitual criminal, and count II in case No. 20-CF-817, theft over $500. In exchange for defendant's guilty plea, the State agreed to dismiss all other counts and cases pending against defendant.

¶ 8       Before accepting defendant's guilty plea, the trial court admonished defendant on the possible penalties for the offenses of being an armed habitual criminal and theft over $500:

> "[(Being an armed habitual criminal)] is a Class X felony. Class X felonies are punishable by a term of incarceration in the Illinois Department of Corrections of between six and 30 years. That would be followed by a three-year period of mandatory supervised release ***. And a *** fine of up to $25,000 is also possible.
>
>       ***
>
> [Theft over $500] is a Class 3 felony. Class 3 felonies are punishable by a term of imprisonment in the Illinois Department of Corrections of between two and five years. That would be followed by a one-year period of mandatory supervised release ***. There's also the possibility of a continuing order of either probation or conditional discharge for up to 30 months, and there's a possibility of a fine of up to $25,000.
>
>       Now, in this case the State has indicated that you are actually eligible for an extended term based upon your prior record. So that would mean that instead of the two to five years you could actually be sentenced anywhere from two to ten years in the Illinois Department of Corrections still followed by that one-year period of mandatory supervised release."

It then asked defendant whether he had any questions about the charges or possible penalties. Defendant responded he did not. In addition to the court's admonishments, the State noted defendant's sentences would be mandatorily consecutive because he had been released on bond (in case No. 20-CF-362) when he committed the offense in case No. 20-CF-817. Neither the court nor the parties mentioned the truth-in-sentencing requirements for either conviction.

¶ 9        The State then provided a factual basis for each charge. First, in May 2020, law enforcement officers found defendant unconscious behind the wheel of a vehicle that was stopped in an intersection. The officers found a .22-caliber rifle in the vehicle. Defendant had been convicted of two forcible felonies and therefore was not authorized to possess a firearm. Next, in August 2020, a resident of Bellflower Township in Illinois reported someone had taken two snowmobiles from his shed. At a traffic stop, defendant told law enforcement officers the two snowmobiles he had on a trailer were his father's. However, officers recovered the snowmobiles from defendant's father's house and ascertained that they belonged to the Bellflower Township resident.

¶ 10       The trial court conditionally concurred in the plea agreement and set a date for sentencing.

¶ 11                    B. Sentencing Hearing

¶ 12                    1. *The Parties' Arguments*

¶ 13       Before beginning its argument, the State noted, for the charge of being an armed habitual criminal, defendant was eligible for drug court. Otherwise, "he is mandatory six to 30 years in the Illinois Department of Corrections to be served at 85% pursuant to statute." Additionally, "there [was] no truth-in-sentencing" for the theft conviction and the sentence

therefore "would be served at 50%." It again stated the sentences would be mandatorily consecutive.

¶ 14       The State requested an aggregate sentence of 14 years' imprisonment, with "ten years at 85%" and "four years at 50%." In arguing for this sentence, it focused on defendant's criminal history, new charges he committed after he was charged in these cases, his poor record while serving sentences in the community, and the threat he posed to the community due to his proclivity for driving while intoxicated. It also asked the trial court to consider the need to deter others and the theft over $500 offense was committed while he was on bond.

¶ 15       Defense counsel argued defendant's history showed his crucial need for substance abuse treatment. Further, the reports associated with the armed habitual criminal charge suggested the firearm was present only because it was part of a collection of property defendant was attempting to sell to buy more drugs. Counsel argued defendant should thus be sentenced to drug court.

¶ 16       In his statement in allocution, defendant said, although drugs had long been a problem for him, they had taken over his life only after his marriage failed in the year before the offenses. He suggested law enforcement officers saved him from drug overdoses "more than one time." Additionally, defendant told the trial court he had been part of the "[foster care] system" and he wanted better for his young son. He asked the court to sentence him to drug court.

¶ 17                          2. *The Sentence*

¶ 18       The trial court determined few factors in mitigation applied. Specifically, it found defendant "definitely ha[d] demonstrated a[n] addiction, specifically in the last couple of years here" and a long sentence could negatively affect his son. Concerning the factors in aggravation, it stated: "[C]ertainly, with a weapon involved, *** there is definitely a threat [of] *** cause of

- 5 -

harm to others, definitely have a long history of prior delinquency, of criminal activity. A sentence in this case is, I believe, necessary to deter others from similar conduct." It further noted defendant was on bond when he committed the offense of being an armed habitual criminal and that "in and of itself is a very serious offense, armed habitual criminal, habitual based upon two prior very serious felonies."

¶ 19 The trial court sentenced defendant to 10 years' imprisonment for being an armed habitual criminal and 4 years' imprisonment for theft over $500.

¶ 20                                3. *The Original Motion to Reconsider*

¶ 21 Defendant filed a timely motion to withdraw his guilty plea or to reconsider the sentence. In his motion, defendant asserted he should be allowed to withdraw his guilty plea because he "was not aware, and did not contemplate, that the 20 CF 362 sentence was to be served at 85%." Alternatively, he asked the trial court to reconsider its sentence on the basis the court incorrectly believed an armed habitual criminal conviction disqualified him from drug court.

¶ 22 At the hearing, defendant had new counsel. Postplea counsel told the trial court plea counsel admitted having no recollection of telling defendant the sentence for being an armed habitual criminal would be "85 percent." Postplea counsel stated defendant said he had always understood any sentence would be "50 percent."

¶ 23 The State responded the percentage of the sentence served is a collateral consequence of the conviction, and therefore defendant did not need to be advised of the percentage of his sentence he would mandatorily serve. It further argued the sentence was consistent with the statutory factors in aggravation and mitigation, particularly defendant's extensive criminal history.

¶ 24    The trial court ruled the availability of good time credit was a "collateral issue": "The statutes outlined what good time credit an individual may receive while in custody, and it depends in large part upon his conduct. That is not a guarantee, specifically if the individual is not conducting themselves properly while in custody." It thus concluded its admonishments were sufficient, and defendant therefore should not be allowed to withdraw his plea. The court did not address defendant's request to reconsider his sentence.

¶ 25                    C. Prior Appeals and Remands

¶ 26    Defendant appealed. In January 2022, we summarily remanded the matter for defense counsel to file a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Cline*, 4-21-0575 (2022) (order).

¶ 27    On remand, postplea counsel filed a Rule 604(d) certificate. He did not file an amended postsentencing motion. The trial court again concluded defendant lacked a basis to withdraw his plea, and defendant again appealed.

¶ 28    We again remanded, holding the record showed postplea counsel failed to comply with Rule 604(d)'s requirements. *People v. Cline*, 2023 IL App (4th) 220471-U, ¶ 24.

¶ 29    On further remand, postplea counsel filed new Rule 604(d) certificates. He also filed an amended motion to withdraw the guilty plea or, in the alternative, to reconsider the sentence. The motion argued defendant should be allowed to withdraw his plea because plea counsel was ineffective for failing to inform defendant he would be required to serve at least 85% of the sentence for being an armed habitual criminal. It further argued that, because possession of a firearm is an element of being an armed habitual criminal, the trial court erred when it considered defendant's possession of a firearm as a factor in aggravation. The motion also argued that, because

a history of at least two convictions of certain offenses is an element of being an armed habitual criminal, it was improper to consider defendant's criminal history in aggravation.

¶ 30    The trial court held an evidentiary hearing on the motion. Defendant testified plea counsel never told him about the requirement he serve at least 85% of his armed habitual criminal sentence. Further, he stated he was unaware of this requirement until the State mentioned it at sentencing, and when he heard the State mention the requirement, he told plea counsel he wanted to withdraw his plea.

¶ 31    The trial court considered and denied both claims in the motion. It noted the sentencing range for being an armed habitual criminal was 6 to 30 years and 10 years was on the lower end of this range.

¶ 32    The trial court rejected defendant's claim it improperly considered a factor inherent in the offense of being an armed habitual criminal as an aggravating factor at sentencing:

> "I believe that the Court is allowed to consider all factors in aggravation. I did not specifically highlight what type of a weapon that was alleged, the type of weapon that was alleged in this count.
>
> Specifically, I indicated because of a weapon, there were certainly threats of harm to others. And I believe that that is a factor that can be considered in determining an appropriate sentence.
>
> Additionally, the Court noted that the defendant had a long history, both of delinquency and of a criminal nature. The Court did not focus on or highlight any of those charges that were the result of or the reason for it being determined to be an armed habitual criminal case.

Just pointing out another factor that the Court is able to note, and that is the fact that the defendant did not lead a law-abiding life for a long period of [time]."

¶ 33     This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35     On appeal, defendant argues (1) plea counsel was ineffective for failing to advise him he was required to serve at least 85% of the sentence for being an armed habitual criminal and (2) the trial court improperly considered a factor inherent in the offense of being an armed habitual criminal as a factor in aggravation at sentencing. We address each argument in turn.

¶ 36          A. Counsel's Ineffectiveness as a Reason to Withdraw the Plea

¶ 37          "A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Agee*, 2023 IL 128413, ¶ 50, 234 N.E.3d 715. "Under *Strickland*, a defendant must establish that counsel's performance fell below an objective standard of reasonableness *and* the defendant was prejudiced by counsel's substandard performance." (Emphasis added.) *Id.* Specifically:

          "To establish the prejudice prong of an ineffective assistance of trial counsel claim in the guilty plea context, the defendant must show there is a reasonable probability that, absent counsel's alleged errors, the defendant would have pled not guilty and insisted on going to trial. [Citations.] A conclusory allegation that a defendant would not have pled guilty and would have demanded a trial is insufficient to establish prejudice. [Citations.] Rather, a guilty plea defendant's claim of counsel's incompetence concerning a matter of defense strategy must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial. [Citation.] Under [the holding of *Hill*

*v. Lockhart*, 474 U.S. 52, 59 (1985)], the question of whether counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful at trial. [Citation.]" *Id.* ¶ 51.

¶ 38 In this case, defendant failed to establish any defenses to the charges of being an armed habitual criminal or theft over $500. Moreover, defendant concedes this failure. He argues instead he had strong defenses to several of the charges dismissed as part of his negotiated plea agreement. However, this is not the standard. Defendant must demonstrate either a claim of actual innocence or a plausible defense for the charges he pled guilty to, not the charges which were dismissed. Because defendant failed to establish a claim of innocence or a plausible defense to the charges to which he pled guilty, he cannot establish the prejudice prong for ineffective assistance of counsel. *Id.*

¶ 39 B. Improper Consideration of a Factor Inherent in the Offense

¶ 40 Alternatively, defendant argues the trial court erred when it improperly considered his possession of a weapon as an aggravating factor in sentencing him for being an armed habitual criminal. He points out possession of a firearm is an element of being an armed habitual criminal (see 720 ILCS 5/24-1.7(a) West 2020)) and maintains courts have rejected the use of factors implicit or inherent in offenses as an improper double enhancement. He further argues the record is devoid of any indication of whether the court's improper consideration of his possession of a weapon impacted the court's decision to send him to prison rather than to drug court. He therefore requests we remand the matter for a new sentencing hearing on both charges.

¶ 41 In response, the State contends the record shows any weight the trial court gave the presence of a weapon as a risk of harm to others was "so insignificant that it did not lead to a

greater sentence." It further maintains the court's remarks were a permissible "passing reference related to the nature and circumstances of the crime" or on " 'the nature and extent of each element of the offense as committed by the defendant' " (quoting *People v. Saldivar*, 113 Ill. 2d 256, 268-269, 497 N.E.2d 1138, 1143 (1986)).

¶ 42 In reply, defendant argues, among other things, to the extent there was any ambiguity about the weight the trial court gave defendant's possession of a weapon, the court resolved it when, at the hearing on defendant's amended postsentencing motion, it defended its consideration of the factor by stating that it "did not specifically highlight what type of a weapon that was alleged, the type of weapon that was alleged in this count." Further, it stated, "Specifically, I indicated because of a weapon, there were certainly threats of harm to others. And I believe that that is a factor that can be considered in determining an appropriate sentence."

¶ 43                        1. *The Rule Against Double Enhancements*

¶ 44 The rule against double enhancements is, at its core, a version of the presumption that the legislature does not intend unjust or absurd results. See, *e.g.*, *People v. Taylor*, 2023 IL 128316, ¶ 45, 220 N.E.3d 1034 ("[W]e presume that, in enacting [a] statute, the legislature did not intend to produce absurd, inconvenient, or unjust results."). We recently explained the logic behind the rule in *People v. Brown*, 2023 IL App (4th) 220476, ¶ 44, 232 N.E.3d 1062:

> "A factor that is implicit in the offense for which the defendant has been convicted generally cannot be used as an aggravating factor in sentencing for that offense. [Citation.] In other words, a single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed. [Citation.] The prohibition of such a 'double enhancement' is a rule of statutory construction based on the assumption that, 'in designating the

- 11 -

appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense.' " [Citation.] (quoting *People v. Phelps*, 211 Ill. 2d 1, 12, 809 N.E.2d 1214, 1220 (2004)).

¶ 45        To be sure, the prohibition does not bar the trial court from considering " ' "the nature and circumstances of the offense" ' " (*People v. Thomas*, 171 Ill. 2d 207, 227, 664 N.E.2d 76, 87 (1996) (quoting *Saldivar*, 113 Ill. 2d at 268, quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668 (1981))) or " ' "the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment" ' " (*id.* (quoting *Saldivar*, 113 Ill. 2d at 268, quoting *Hunter*, 101 Ill. App. 3d at 694)). Moreover, "[f]actors inherent in the offense can sometimes be considered, along with other factors in aggravation and mitigation, as part of the nature and circumstances of the case." *Brown*, 2023 IL App (4th) 220476, ¶ 52 (quoting *People v. McGath*, 2017 IL App (4th) 150608, ¶ 73, 83 N.E.3d 671).

¶ 46        We have held that whether the trial court relied on improper factors in deciding a defendant's sentence is a question of law, and that our review is thus *de novo*. *Id.* ¶ 43 (citing *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590). In *Williams*, we relied on the Second District case of *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459, which in turn relied on *People v. Chaney*, 379 Ill. App. 3d 524, 527, 884 N.E.2d 783, 786 (2008). *Williams*, 2018 IL App (4th) 150759, ¶ 18. We note *Chaney* did not cite further authority. However, our supreme court in *Phelps* stated: "The double-enhancement rule is one of statutory construction [citation], and the standard of review therefore is *de novo* [citation]." *Phelps*, 211 Ill. 2d at 12. *Phelps* is binding on us where the "improper factor" at issue is a double enhancement. "A sentence based on improper factors will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor

was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21, 896 N.E.2d 239, 251 (2008).

¶ 47          2. *The Trial Court's Consideration of the Presence of a Weapon*

¶ 48          The parties agree the presence of a weapon is a factor inherent in the offense of being an armed habitual criminal. One element of the offense as charged here is "possess[ing] *** any firearm after having been convicted a total of 2 or more times of any combination of the [specified] offenses." 720 ILCS 5/24-1.7(a) (West 2020). Firearms are a category of weapon, so defendant could not have been guilty of being an armed habitual criminal unless he possessed a weapon. We thus need only analyze (1) whether the trial court's consideration of the possession of a weapon was properly related to the nature and circumstances of the offense and (2) whether the record establishes the weight the court gave to the presence of a weapon had a negligible effect on defendant's sentence.

¶ 49          First, the trial court's consideration of the presence of a weapon did not relate to the nature and circumstances of the offense in any way other than what was inherent to the offense. To avoid being a consideration of a factor inherent to an offense, a consideration of the nature and circumstances of the offense must be *more specific* than the elements of the offense. Thus, the court might have properly considered the characteristics of the firearm or how accessible it was to defendant. Here, the court considered a factor that was more general than the relevant element of the offense: it considered the firearm was "a weapon." Specifically, the court stated it was considering, "in aggravation, certainly, with a weapon involved, *** there is definitely a threat [of] *** cause of harm to others." Thus, it unambiguously treated a factor inherent in the offense as a factor in aggravation.

¶ 50 Second, we cannot "determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *Heider*, 231 Ill. 2d at 21.

¶ 51 One purpose of a motion to reconsider a sentence is to give the trial court an opportunity to correct any errors it made. See, *e.g.*, *People v. Hare*, 2022 IL App (2d) 190848, ¶ 32, 198 N.E.3d 669. Here, when defendant asked the court to correct its consideration of the presence of a weapon, it instead defended its improper consideration of said factor.

¶ 52 Defendant, in his amended motion for reconsideration of the sentence, asked the trial court to correct this error. However, the court declined to do so nor state whether the factor was insignificant; instead, the court restated the propriety of what it had done. Moreover, the court suggested it could avoid the prohibition on considering factors inherent to an offense by considering the presence of a "weapon"—the general category to which a firearm belongs—rather than a specific firearm *as such*:

> "I believe that the Court is allowed to consider all factors in aggravation. I did not specifically highlight what type of a weapon that was alleged, the type of weapon that was alleged in this count.
>
> Specifically, I indicated because of a weapon, there were certainly threats of harm to others. And I believe that that is a factor that can be considered in determining an appropriate sentence."

The court thus made clear it had given at least some weight to the presence of a weapon. Because of this, we cannot conclude "the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *Heider*, 231 Ill. 2d at 21. Therefore, we vacate defendant's sentences and remand for a new sentencing hearing.

¶ 53    3. *The Trial Court's Consideration of the Seriousness of Predicate Offenses*

¶ 54    As the issue may occur on resentencing, we address a claim by defendant that it was improper for the trial court to consider the seriousness of the predicate offenses for being an armed habitual criminal. We disagree. Conviction of two qualifying felonies is an element of being an armed habitual criminal. See 720 ILCS 5/24-1.7(a) (West 2020). Thus, the trial court cannot treat as aggravating the mere fact defendant has two qualifying convictions. However, the qualifying offenses are not necessarily identical in seriousness. For instance, predicate offenses include unlawful use of a weapon by a felon and home invasion. Unlawful use of a weapon by a felon is, in the general instance, "a Class 3 felony for which the person shall be sentenced to no less than 2 years and no more than 10 years." *Id.* § 24-1.1(e). The least serious form of home invasion is a Class X felony. *Id.* § 19-6(c). The seriousness of the specific predicate offenses is thus part of the nature and circumstances of the offense of being an armed habitual criminal. Similarly, the seriousness of the particular circumstances of each predicate offense is also part of the nature and circumstances of defendant's offense of being an armed habitual criminal. See *People v. Brown*, 2018 IL App (1st) 160924, ¶ 21, 129 N.E.3d 150 (holding the existence of a predicate conviction determined the defendant's eligibility for a conviction of being an armed habitual criminal, whereas the nature and circumstances of the predicate offense were relevant sentencing factors).

¶ 55    III. CONCLUSION

¶ 56    For the reasons stated, we vacate both of defendant's sentences and remand the matter for a new sentencing hearing in conformity with this order.

¶ 57    Affirmed in part and vacated in part; cause remanded.