2024 IL App (1st) 232414
No. 1-23-2414B
Opinion filed March 29, 2024

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20 CR 09262 |
| ADOLPHUS McDONALD, | ) ) | The Honorable Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Hyman and C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Adolphus McDonald was charged with first degree murder for the death of his three-month old son as a result of shaken-baby syndrome. In this appeal, brought pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023), defendant challenges the order entered by the trial court on December 6, 2023, that denied him pretrial release under the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Acts 101-652, § 10-255, 102-1104 (eff. Jan. 1, 2023) (commonly referred to as the

Pretrial Fairness Act).[1] For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 2                                      BACKGROUND

¶ 3                                  I. The Alleged Offense

¶ 4          In order to describe the underlying offense, we provide here a summary of the evidence regarding the offense that the State proffered at the detention hearing held on December 6, 2023. On August 21, 2020, Calumet City police officers and paramedics responded to a call regarding an unresponsive child. When paramedics arrived on the scene, defendant was standing outside and guided officers into the apartment. Inside the apartment, defendant's mother was administering cardiopulmonary resuscitation (CPR) to the infant. Paramedics transferred the infant to St. Margaret's Hospital in Hammond, Indiana. The infant was later airlifted to Comer Hospital for further care. Defendant informed officers that the child spent the night with him, and no one else was home. Defendant allegedly rocked the child to sleep and placed him on the bed. He then went into the living room to use the computer. When defendant checked on the child, the child was no longer breathing. defendant then called his mother, a registered nurse, to the home, and she began to render CPR. The child was reportedly in good health and had no listed medical problems before this incident.

¶ 5          Doctors at Comer Hospital observed that the child had suffered substantial internal brain bleeds in multiple locations, which were consistent with violent shaking. The child died from his injuries on August 25, 2020. Doctors found the cause of death to be severe brain

---

[1] In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 (discussing Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023) and Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023)).

injury, leading to brain death. The child had extensive retinal hemorrhages, abusive head trauma, and left radius and ulna fractures to the arm. Doctors ruled the death to be a homicide by child abuse. Defendant was arrested on September 2, 2020, and charged with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2020)), and one count of endangering the life or health of a child (*id.* § 12C-5(a)(1)), a Class 3 Felony. Defendant allegedly requested time from work to visit the child, but then never visited during the four-day period that the child was in the hospital. Defendant allegedly made admissions to the child's mother in a phone call that he shook the baby.

¶ 6                    II. Procedural History of the Case

¶ 7        As noted above, defendant was arrested on September 2, 2020. On September 3, 2020, bail was set at "$1,000,000 Deposit Bond[,] Collect: $100,000," with conditions, including that he surrender his firearm owners identification card and gun to the Calumet City Police Department, that he report to a parole officer upon release, and that he have no contact with a named person or entry of her premises. Despite the grant of bail, the ultimate result was that defendant remained in custody. Every few months, the court entered a "Remain in Custody" order, which it noted were "By Agreement."

¶ 8        However, on October 17, 2023, defendant filed a "Petition to Grant Pretrial Release Under New Law." In his petition, defendant stated that he was arrested on September 2, 2020, that he was unable to post the bond that was set on September 3, 2020, and that, as a result, he had been in custody for 1140 days. The petition sought a hearing under the new law.

¶ 9        Apparently in response to defendant's petition, the State filed a "Petition for Pretrial Detention Hearing." (In pen, it states it was filed on October 1, 2023; however, it is stamped filed on November 11, 2023.) On this form petition, the State checked the boxes for "(a)(1)

3

non-probationable felony on charge/background," "(a)(1.5) forcible felony," and "poses a real and present threat." However, the State did not check the box for "has a high likelihood of willful flight to avoid prosecution." On the lines provided, the State described the offense. The State also noted that defendant had a 2004 misdemeanor for reckless driving.

¶ 10    The first two boxes checked by the State refer to subsections of section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). Subsection (a)(1), which was the first box checked by the State, allows a court to deny pretrial release if defendant is charged with a felony offense other than a forcible felony and defendant poses a threat. *Id.* § 110-6.1(a)(1).Subsection (a)(1.5), which was the second box checked by the State, allows a court to deny pretrial release if defendant is charged with a forcible felony and poses a threat. *Id.* § 110-6.1(a)(1.5).

¶ 11                        III. Arguments at the Hearing

¶ 12    At the hearing held on December 6, 2023, the State proffered the evidence that we already described above regarding the underlying offense and argued that defendant should be detained based on it. The defense argued that defendant was 40 years old and a graduate of Englewood Tech High School, with no prior criminal history. Counsel argued that defendant had worked continuously since graduation and that his prior work history included employment with Walmart, as well as a position as a security guard for a trucking company, which he held when arrested. Defense counsel disputed that defendant made admissions, arguing that defendant's statements were taken out of context. Counsel noted that defendant lived next door to his mother and brother and was a deacon in his church, where he taught Bible study and Sunday school. Defense counsel argued that defendant had no other children and that he did not pose a danger to anyone and asked the trial court to consider release with reasonable conditions. Neither side at the hearing informed the court that defendant had already

4

been granted release on bail or informed the court of the conditions upon which release had already been deemed safe. Neither side mentioned any facts that had arisen between the prior bail order and the December 6, 2023, detention hearing.

¶ 13                                    IV. Order Appealed From

¶ 14          At the close of the hearing on December 6, 2023, the trial court entered a form order denying pretrial release on the ground that defendant posed a threat and that no condition or combination of conditions could mitigate the threat that he posed to others. On the form, the court wrote in pen the details of the offense. The box regarding flight was not checked. The form contained a box that could be checked if the State had shown that no condition or combination of conditions could mitigate the risk of defendant's flight. However, as noted, the box next to this option was not checked by the court and the lines under it were left blank. On December 15, 2023, defendant filed a timely notice of appeal. On the form notice, defendant checked, among other things, that the State had failed to prove risk of flight.

¶ 15                                          ANALYSIS

¶ 16          On appeal, defendant challenges, first, the timeliness of the State's petition to detain him. If the State's petition is found to be timely, defendant then argues that the State failed in its burden to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person or to the community.

¶ 17                    I. Timeliness of the State's Detention Petition

¶ 18          Defendant argues that the State's petition was untimely because it was filed more than 3 years after both his arrest and the order releasing him on bail and more than 60 days after the implementation of the Pretrial Fairness Act. Defendant was arrested on September 2, 2020, and ordered released on September 3, 2020, by D-Bond of $1 million. Defendant states the

record contains no evidence that the State filed a no-bail petition at that time. Unable to post bail, defendant remained in custody. After the amendments to the Code by the Pretrial Fairness Act became effective on September 18, 2023, defendant argues that he promptly requested release on October 17, 2023, but that the State's petition to detain him, filed on November 1, 2023, was untimely.

¶ 19     The State responds that the timeliness issue was never raised before the trial court and was not included in defendant's notice of appeal and, therefore, is forfeited for our consideration. Defendant concedes that he did not raise this issue in the trial court or include it in his notice of appeal but contends that this issue is reviewable under plain error. In the alternative, defendant contends that his counsel was ineffective for failing to move to strike the State's detention petition or otherwise raise this issue before the trial court.

¶ 20     In general, a defendant preserves an issue for review by timely objecting to it and including it in a written posttrial motion. *People v. Colyar*, 2013 IL 111835, ¶ 27; *People v. Marzonie*, 2018 IL App (4th) 160107, ¶ 51. Because defendant failed to file a motion to strike the State's petition for detention or include it in his notice of appeal, the issue of the timeliness of the State's petition is forfeited. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). We note that waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right. *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 9; *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 51.

¶ 21     The plain error doctrine allows a reviewing court to address defects affecting substantial rights (a) if the evidence is closely balanced or (b) if fundamental fairness so requires it rather than finding the claims forfeited. *People v. Woods*, 214 Ill. 2d 455, 471 (2005). A defendant raising a plain error argument bears the burden of persuasion. *People v.*

*Thompson*, 238 Ill. 2d 598, 613 (2010). The first step in a plain error review generally is to determine whether any error occurred, which is defendant's burden to establish. *Id.* Accordingly, to establish plain error, a defendant must first show that a clear or obvious error occurred. *Id.* Next, he must show that the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error (*People v. Naylor*, 229 Ill. 2d 584, 593 (2008)), or that the error was sufficiently grave that it deprived defendant of a fair trial (*People v. Herron*, 215 Ill. 2d 167, 187 (2005)).

¶ 22 In determining if the evidence was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of the evidence within the context of the case. *Marzonie*, 2018 IL App (4th) 160107, ¶ 53 (citing *People v. Sebby*, 2017 IL 119445, ¶ 53). If the defendant meets his burden, he has demonstrated actual prejudice, and his conviction should be reversed. *Id.* (citing *Sebby*, 2017 IL 119445, ¶ 51).

¶ 23 When a defendant claims second-prong error under fundamental fairness, he must prove that a structural error occurred. *Id.* ¶ 54 (citing *Thompson*, 238 Ill. 2d at 613). A structural error is one that renders a criminal trial fundamentally unfair or unreliable in determining a defendant's guilt or innocence. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011). Structural errors occur in very limited circumstances, such as the complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, or a defective reasonable doubt instruction. *Marzonie*, 2018 IL App (4th) 160107, ¶ 54. If the defendant fails to meet his burden of persuasion, the issue is forfeited, and the reviewing court will honor the procedural default. *Id.* ¶ 55.

¶ 24            In asserting the application of plain error, defendant merely cites to *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15, and states that a misapplication of the law that affects a defendant's fundamental right to liberty constitutes plain error as it affects the integrity of the judicial system. We will examine this issue as a second-prong claim of plain error.

¶ 25            We must first determine if the trial court committed any error in allowing the State to file a detention petition three years after defendant's arrest. We find that it did not.

¶ 26            It is important to first note the circumstances under which this case is before us. While the vast majority of appeals under the Pretrial Fairness Act amendments to the Code are filed very soon after a defendant's arrest and within fourteen days of the detention hearing, this is an older case, as defendant was arrested in September 2020. We do not have a report of proceedings related to defendant's initial bond hearing at that time, we only know that a D-Bond was set for $1 million, and defendant was unable to make the bond and was held in pretrial custody. The statute in effect at that time did not allow the State to file a petition for pretrial detention. See 725 ILCS 5/110-5 (West 2018). After the amended statute became effective in September 2023, defendant filed a petition requesting pretrial release under the amended statute, and the State subsequently filed the pretrial detention petition that is at issue here, in accordance with the new procedures contained in the amended statute. See 725 ILCS 5/110-2 (West 2022).

¶ 27            This issue has previously come before the court in *People v. Whitmore*, 2023 IL App (1st) 231807, *People v. Brown*, 2023 IL App (1st) 231890, and *People v. Haisley*, 2024 IL App (1st) 232163, with conflicting results. In *Brown*, the Third Division of the First District held that the State's detention petition was untimely when it was not filed on June 24, 2023 (prior to the effective date of the amended statute). However, in both *Whitmore* and *Haisley*, the Fifth

and Fourth Divisions of the First District, respectively, the court found that the State could file petitions after the defendant's first court appearance after the effective date of the amended statute. Here, however, defendant argues that the State's petition was untimely because it was not filed until his second court appearance after the amended statute's effective date. We disagree and find the decisions in *Whitmore* and *Haisley* to be instructive in our analysis here.

¶ 28 Here, defendant initiated the proceedings by filing his petition for pretrial release on October 17, 2023. Neither defendant's memorandum nor the record indicates that the State or the trial court had advance notice that defendant was going to file such petition. The State ultimately filed its detention petition in response to defendant's petition for pretrial release on November 1, 2023, just 14 days after defendant filed his petition for pretrial release. The hearing on October 17, 2023, was defendant's first appearance before a judge since the amended statute became effective on September 18, 2023, and the hearing was continued to November 1, 2023. *Whitmore* specifically found that section 110-6.1 of the amended Code (725 ILCS 5/110-6.1 (West 2022)) allows the State to seek detention of defendants who were granted pretrial release with cash bail prior to the Pretrial Fairness Act's effective date. See *Whitmore*, 2023 IL App (1st) 231807, ¶ 11. Therefore, we do not deem the State's petition untimely, and the trial court did not err in hearing it. We believe that defendant's filing of the pretrial release petition opened the door to proceedings dictated by the amended statute, including the State's ability to file a pretrial detention petition in response. The amended statute anticipates the proceedings to occur just after a defendant's arrest, at an initial pretrial detention hearing. However, in this case, defendant reopened the matter by filing a pretrial release petition three years after his initial bond hearing was held, thus availing himself of the benefit of the amended statute, but at the same time, he also subjected himself to the procedures

9

dictated by the amended statute. He cannot now complain about application of the very statute he requested relief under. See *People v. Menssen*, 263 Ill. App. 3d 946, 951 (1994) (a defendant cannot complain on appeal about evidence which was elicited on cross-examination by defense counsel and which defendant did not move to strike). We therefore conclude that the trial court did not err in allowing the State's petition.

¶ 29 As we have concluded that there was no error, our inquiry for purposes of plain error review ends, and we therefore honor the procedural default of defendant's claim. See *Marzonie*, 2018 IL App (4th) 160107, ¶ 54. In the alternative, defendant argues that defense counsel was ineffective for failing to move to strike the State's detention petition. We disagree.

¶ 30 The standard for reviewing an ineffective assistance of counsel claim is whether the attorney's conduct fell below an objective standard of reasonableness and whether defendant was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate prejudice, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. If either prong of the *Strickland* test cannot be shown, then the defendant has not established ineffective assistance of counsel. *Id.* at 697.

¶ 31 We find that defendant's claim of ineffective assistance of counsel fails because counsel was not deficient where any objection to the State's petition would have been unsuccessful because, as discussed above, the State was entitled to file a pretrial detention petition under the amended statute. Accordingly, defendant cannot meet his burden of establishing prejudice as there is no reasonable probability that the outcome of the proceeding would have been different if counsel had filed a futile motion to strike the State's petition.

¶ 32                                   II. Whether Defendant Posed a Threat

¶ 33            Defendant next contends that the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person or the community and that no conditions could mitigate that threat. He argues that the State did not identify any specific person or persons who would be at risk if he was released and only relied on the gravity of the allegations against him. Defendant also contends that the State did not prove that no conditions could mitigate any threat and that the trial court abused its discretion in granting the State's detention petition.

¶ 34            The State responds that defendant is a danger to the community and that no condition or combination of conditions can mitigate the real and present threat to safety that he poses to others based on (1) the doctor's conclusions after an autopsy, which showed that the cause and manner of death was homicide due to child abuse; (2) defendant's alleged admissions to the mother of the victim that he shook the baby; and (3) defendant's failure to appear at the hospital despite indicating he would. The State argues that the trial court did not abuse its discretion in finding that defendant is a danger to any person or the community. However, the State requests that this court remand this matter to the trial court for compliance with section 110-6.1(h)(1) (725 ILCS 5/110- 6.1(h)(1) (West 2022)). The State did not seek detention based on risk of flight, and as a result, the trial court's order was not based on that ground.

¶ 35            Pretrial release is governed by article 110 of the Code  (725 ILCS 5/art. 110 (West 2022)). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. 725 ILCS 5/110-2(a) (West 2022). Pursuant to the Code, a defendant's pretrial release may be denied only in certain statutorily limited situations. *Id*. § 110-6.1. Upon the State's filing of a verified petition requesting denial of pretrial release, the State has the

11

burden of proving by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and or prevent the defendant's willful flight from prosecution. *Id*. §§ 110-2, 110-6.1(a)(1.5), (4), (8).

¶ 36　　　　At all pretrial hearings, the prosecution has the burden of proving by clear and convincing evidence that any condition of release is necessary. *Id*. § 110-2(b). In any order for detention, the court shall make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. *Id*. § 110-6.1(h)(1).

¶ 37　　　　We review the trial court's detention decision for an abuse of discretion. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 12. A court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or when no reasonable person would agree with the position adopted by the trial court. *Id.*

¶ 38　　　　A trial court's finding that the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community and/or that the defendant had a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previous conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release, will not be reversed unless those findings are against the manifest weight of the evidence. *People v. Vingara*, 2023 IL App

(5th) 230698, ¶ 10. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Under this standard, we give deference to the trial court as the finder of fact as it is in the best position to observe the conduct and demeanor of the witnesses. *Deleon*, 227 Ill. 2d at 332.

¶ 39        Here, the trial court noted that the State met its burden of proving that defendant committed an eligible offense of first degree murder. The court also stated that its decision to deny defendant pretrial release was based on the nature and circumstances of the charged offenses; namely, the doctor's determination that the injuries to the three-month child were caused by "severe shaking," and that defendant was alone with his infant son when the infant suffered abuse which resulted in bleeding to the brain, fractures, head trauma, and ultimately death. The court also indicated that it considered defendant's lack of criminal history, his work history, his family situation, and the lack of a weapon used. The trial court concluded that defendant posed a real and present threat to the safety of persons based on the facts of the case. The court further found that no conditions or combination of conditions could mitigate the threat to safety that defendant posed towards others.

¶ 40        We find that the trial court's findings to be against the manifest weight of the evidence in this case. Defendant is a 40-year-old, who has no criminal background, who has been continuously employed since graduating high school, who was working as a security guard at the time of the offense, who lives next door to his mother and brother, and who served as a church deacon. He has no other children, and there is no indication defendant will be exposed to or responsible for the care of other children in his day-to-day life. Furthermore, defendant's actions after finding his child unresponsive do not support a finding that he is a safety threat;

13

when he realized the infant was not responsive, he called his mother, a registered nurse, to the apartment to perform CPR. Last but not least, we observe that, three years earlier under less lenient laws than those that exist now, the trial court found defendant sufficiently safe for release on bond with conditions, and the State does not allege that the facts have changed in the intervening years while defendant has been in custody. Thus, we conclude that the trial court's finding, that no conditions or combination of conditions could mitigate the threat to safety that defendant posed towards others, was against the weight of the evidence.

¶ 41　　　　Having found that the reason given for the order was against the manifest weight of the evidence, we must necessarily find that the trial court's detention order was an abuse of discretion. We note that the State has also requested a remand for the trial court's compliance with section 110-6.1(h)(1).

¶ 42　　　　The Code requires that, in any order for detention, the trial court shall make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(h)(1) (West 2022). However, the record does not indicate that the trial court considered any less restrictive means to pretrial detention or conditions of release, which was an abuse of discretion, and so we remand for the trial court to determine the detention alternatives and conditions that will mitigate any alleged threat, such as those, for example, that were previously ordered by the trial court in this very case several years ago.

¶ 43　　　　　　　　　　　　　CONCLUSION

14

¶ 44        For the foregoing reasons, we reverse the trial court's order entered on December 6, 2023, requiring defendant's pretrial detention and remand for consideration and imposition of detention alternatives and conditions that will mitigate any alleged threat posed to the safety of others. Mandate shall issue *instanter*.

¶ 45        Reversed and remanded with directions.

*People v. McDonald*, 2024 IL App (1st) 232414

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CR-09262; the Hon. Geraldine D'Souza, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R Mitchell Jr., Public Defender, of Chicago (Rebecca Cohen, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Caitlin Chenus, Assistant State's Attorney, of counsel), for the People. |