2024 IL App (1st) 240207-U
No. 1-24-0207B
Order filed April 17, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 0215301 |
| | ) | |
| DATAVEON WATSON | ) | The Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justice C.A. Walker concurred in the judgement.
Justice Tailor dissented.

**ORDER**

¶ 1    *Held*: Reversed and remanded, where the State did not timely petition to detain.

¶ 2    Simple questions often have simple answers. This appeal asks whether the State, like any other litigant, must meet its deadlines under the law. We hold, yes, the State must do so. Here, the State did not timely file when petitioning to detain Dataveon Watson under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Because enforcing the law requires complying with the law, we reverse and remand.

¶ 3                                    Background

¶ 4      This prosecution began before the Pretrial Fairness Act took effect and eliminated cash bail. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. The trial court had imposed on Dataveon Watson cash bail and, if paid, electronic monitoring. Watson petitioned under the new law to remove the requirement that he deposit bail to secure pretrial release (725 ILCS 5/110-7.5(b) (West 2022)). In reply, the State petitioned to deny him pretrial release (*id.* § 110-6.1(a)). At a hearing, the trial court granted the parties leave to file their petitions and ordered Watson detained.

¶ 5                                    Hearing

¶ 6      Both parties announced ready, but Watson objected to litigating the State's petition to detain, which counsel contended was not timely. The State replied that recent caselaw from this court interpreted the Code as amended by the Pretrial Fairness Act as permitting the State to petition to detain within 21 days of receiving notice that a defendant wants to litigate any other issue under the new law.

¶ 7      The trial court overruled Watson's objection, concluding one of those recent decisions was "controlling." See *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 16 (holding State may petition to deny pretrial release after defendant moves for relief from financial conditions pretrial release). Because the State petitioned to detain Watson within 21 days after receiving notice of Watson's filing, the State's petition was timely.

¶ 8      The trial court then held a hearing on the State's petition to detain. Watson stood accused of a detainable offense, being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)). 725 ILCS 5/110-6.1(a)(6)(D) (West 2022). After hearing the parties' proffers, the trial court found: (i) the proof was evident or the presumption great that Watson committed the offense; (ii) Watson

posed a real and present threat to the safety of any person or persons or the community; and (iii) no condition or combination of conditions could mitigate that threat. *id.* § 110-6.1(e). The trial court entered a written order summarizing its findings.

¶ 9     The trial court did not hold a hearing on Watson's petition to remove the requirement that he deposit bail to secure pretrial release (*id.* § 110-7.5(b)). Nor did the trial court mention Watson's petition in its oral pronouncement granting the State's petition. Yet the common law record contains a written notation asserting Watson's petition was "denied."

¶ 10    We note the record raises factual questions about Watson's present custody status. After his arrest, Watson's petition asserted that he was "transferred to the Illinois Department of Corrections" because his "supervised release was revoked." And the State's proffer noted Watson was on mandatory supervised release when the underlying offenses allegedly occurred.

¶ 11                                    Analysis

¶ 12    Watson partly seeks to reverse the trial court's decision, arguing the State's petition to detain was not timely. We agree.

¶ 13    We review *de novo* the timeliness of the State's petition to detain without deference to the trial court. *People v. Taylor*, 2023 IL 128316, ¶ 45 (reviewing *de novo* issue of statutory construction). Our "fundamental objective" is to "ascertain and give effect to the legislature's intent." *Taylor*, 2023 IL 128316, ¶ 45. The statute's plain language is the most reliable indicator of the legislature's intent. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 14    Section 110-6.1(c) of the Code dictates when the State may petition for pretrial detention. The State may file: (i) at the defendant's first appearance before a judge without notice to the defendant or (ii) within 21 calendar days after the defendant was arrested and released, with

reasonable notice to the defendant. 725 ILCS 5/110-6.1(c)(1) (West 2022). This provision applies even if the State's prosecution began before the effective date of the Pretrial Fairness Act. See *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 50 ("[F]or individuals who were granted release under the prior bail system yet remained in custody through no fault of their own, section 110-6.1 of the Code is silent and provides no remedy for the State.").

¶ 15    In *Watkins-Romaine*, for example, this court reversed the trial court's grant of the State's petition for pretrial detention as untimely. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 56. The initial bond hearing occurred before the effective date of the Pretrial Fairness Act and so before pertinent amendments to the Code. *Id.* ¶ 34. Several months later, after the Act's effective date, the trial court permitted the State to petition to detain the defendant, who had never been released despite receiving cash bail as a condition of his pretrial release. *Id.* ¶¶ 5, 34. But permitting the State to do so was "immensely unfair." *Id.* ¶ 46. The plain language of the Code did not "permit the State to have a second bite at the detention apple." *Id.*

¶ 16    The record before us compels the same result. Watson's bond hearing occurred before the effective date of the Pretrial Fairness Act. There, the trial court imposed cash bail and, if paid, electronic monitoring. Yet, after the Act's effective date, the State petitioned to detain Watson, who had never been released despite receiving cash bail as a condition of his pretrial release. As in *Watkins-Romaine*, permitting the State to do so was immensely unfair and without a legal basis under the plain language of the Code. *Id.* ¶¶ 34, 46.

¶ 17    In reaching this conclusion, we acknowledge this court has not spoken consistently on this issue. Indeed, the parties' memos faithfully collect many dueling decisions within and across the appellate court districts. Still, we take as our guide the Code and, in doing so, find *Watkins-*

*Romaine* best reasoned. See generally *Id.* ¶¶ 35-53 (declining to follow *People v. Whitmore*, 2023 IL App (1st) 231807; *People v. Jones*, 2023 IL App (4th) 230837; *People v. Haisley*, 2024 IL App (1st) 232163). For the reasons *Watkins-Romaine* explains, reasons the dissent ignores, we likewise decline to follow *McDonald. Infra* ¶¶ 37-39 (discussing *People v. McDonald*, 2024 IL App (1st) 232414). (The majority here concurred in *McDonald* but have reconsidered and changed our minds, taking to heart these words of John Kenneth Galbraith, "Faced with the choice between changing one's mind and proving that there is no need to do so, almost everybody gets busy on the proof.") Cases like *Whitmore*, *Jones*, *Haisley*, and *McDonald* err by writing section 110-6.1 anew. We now clarify: "The fact that the Code's timing requirements do not account for a defendant's first appearance after the amendment's effective date should not and cannot be seen as an oversight." *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 39.

¶ 18    Reviewing courts should not complicate the Code's simple dictates to fix problems of their own making. The Code must be our guide, not whatever we think the Code should say "[p]ractically speaking." *Infra* ¶ 41. For example, the dissent errs by transforming the State's petition to detain under section 110-6.1 into a "response" to Watson's petition. *Infra* ¶ 41. The Code makes clear that petitions to deny pretrial release under section 110-6.1 are distinct from those to revoke pretrial release under section 110-6. Compare 725 ILCS 5/110-6.1 (West 2022) with *id.* § 110-6. Likewise, the Code contains no basis for the dissent's assertion that the trial court could have properly detained Watson when hearing his petition. See *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 39 ("If the legislature wanted the hearing triggered by section 110-7.5(b) to include reconsideration of whether a defendant is eligible for release or if it wanted to give the State the ability to file a petition for detention against defendants who had already been ordered

released but remained in custody after the effective date of the amended Code, it would have said so.")

¶ 19    Finally, contrary to the dissent's mistaken assertion (*infra* ¶ 39), we note the trial court has not yet held a hearing on Watson's petition to remove the requirement that he deposit bail to secure pretrial release (725 ILCS 5/110-7.5(b) (West 2022)). Nor does the record clearly show Watson's custody status.

¶ 20    Section 110-7.5 of the Code explicitly addresses those who were arrested before the amended Code's effective date.

> "(b) On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." *Id.* § 110-7.5(b).

¶ 21    In turn, Section 110-5(e) describes the hearing to which a defendant may be entitled.

> "If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of a defendant to pay for a condition of release or any other ineligibility for a condition of

pretrial release shall not be used as a justification for the pretrial detention of that defendant." *Id.* § 110-5(e).

¶ 22    On remand, the trial court should (i) make a factual finding about Watson's custody status; (ii) make a legal determination about whether Watson "remains in pretrial detention" and thus may avail himself of sections 110-7.5(b) and 110-5(e) of the amended Code; and (iii) if so, then hold a hearing on Watson's petition that is consistent with those sections and this decision.

¶ 23    In light of the dueling positions by appellate panels, it would be for the legislature to clarify its intent and not for the court to rewrite the statute. But, this issue will resolve itself because those cases with cash bonds will evaporate with the passage of time.

¶ 24                                      Conclusion

¶ 25    The State, like any other litigant, must meet its deadlines under the law. The Code's new deadlines apply even if the State's prosecution began before the effective date of the Pretrial Fairness Act.

¶ 26    Reversed and remanded with instructions.

¶ 27    JUSTICE TAILOR, dissenting:

¶ 28    Simple questions do have simple answers, but if the question is truly simple, then the answer should be the same every time. As the majority has acknowledged, this court, particularly this division, has not spoken consistently on the issue of whether the State may file a petition to detain pursuant to subsection 110-6.1(c)(1) of the Code (725 ILCS 5/110-6.1(c)(1) (West 2022)), when a defendant remains in pretrial detention because he was granted bail under the previous statutory scheme but could not satisfy one of the conditions of his release, including the condition of depositing security under subsection 110-7.5(b). 725 ILCS 5/110-7.5(b) (West 2022). Most

recently, in *People v. McDonald*, 2024 IL App (1st) 232414, this division held that the State was permitted to file a petition to detain under subsection 110-6.1(c)(1) under such circumstances. Here, the majority has ignored *McDonald*, and has found, pursuant to *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 5, that the State is not permitted to file a petition to detain under subsection 110-6.1(c)(1) in these circumstances. For the following reasons, I respectfully dissent from the majority's holding.

¶ 29     At issue here is the State's petition to detain filed under subsection 110-6.1(c)(1), which was filed in response to Watson's petition to remove financial conditions. Subsection 110-6.1(c)(1) provides,

> "A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained." 725 ILCS 5/110-6.1(c)(1) (West 2022).

¶ 30     Watson argues that the State lacked the statutory authority to file a petition to detain him under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as section 110-6.1 does not apply to him. Watson further argues that pursuant to subsection 110-7.5(b) (725 ILCS 5/110-7.5(b) (West 2022)), he was "entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022). Subsection 110-5(e) states:

> "If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the

defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of a defendant to pay for a condition of release or any other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." *Id.* § 110-5(e).

¶ 31 In the alternative, Watson contends that if the State had the authority to file a petition to detain him under section 110-6.1, then the State's petition was untimely and should not have been considered "where it was not filed at the initial appearance before a judge or within 21 days after [he] was arrested and ordered released." Watson does not challenge the circuit court's findings that: (1) the proof was evident and presumption great that Watson had committed a detainable offense; (2) Watson posed a real and present threat to the safety of a person, persons, or the community; or (3) no condition or combination of conditions can mitigate the threat posed by him.

¶ 32 When interpreting a statute, our fundamental objective "is to ascertain and give effect to the legislature's intent." *People v. Newton*, 2018 IL 122958, ¶ 14. In doing so, we look to "the language of the statute, given its plain and ordinary meaning" as "[t]he most reliable indicator ***." *Id*. We must read the statue as a whole, "with each provision construed in connection with every other section." *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 48. If the language is clear, "we must apply the statute as written without resort to other tools of construction." *Id*. But where the statute is ambiguous, we "may consider the reason and

necessity for the law, the evils it was intended to remedy, and its ultimate aims." *People v. Taylor*, 2023 IL 128316, ¶ 45. Additionally, "we presume that, in enacting the statute, the legislature did not intend to produce absurd, inconvenient, or unjust results." *Id*. We review matters of statutory interpretation *de novo*. *Id*.

¶ 33 This court recently considered Watson's arguments advanced by similarly situated defendants in *People v. Whitmore*, 2023 IL App (1st) 231807, and *McDonald*, 2024 IL App (1st) 232414. In *Whitmore*, the defendant argued that the State could not petition to detain him under section 110-6.1 of the Code because he remained in pretrial detention under section 110-7.5(b). The defendant further argued that even if the State could petition to detain him under section 110-6.1, the State's petition was untimely.

¶ 34 Whitmore argued that the language in subsection 110-7.5(b) of the Code, which provides that "any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5," required the circuit court to do nothing more than reconsider the conditions of pretrial release. *Id*. ¶7 (quoting 725 ILCS 5/110-7.5(b) (West 2022)). Therefore, he argued, the State could not petition to detain him under section 110-6.1. In analyzing Whitmore's claim, we looked to the text of section 110-7.5:

"(a) On or after January 1, 2023, any person having been previously released pretrial on the condition of the deposit of security shall be allowed to remain on pretrial release under the terms of their original bail bond. *This Section* shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 or a petition for revocation or sanctions under Section 110-6.

(b) On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under *subsection* (e) of Section 110-5.

On or after January 1, 2023, any person, not subject to *subsection* (b), who remains in pretrial detention and is eligible for detention under *Section* 110-6.1 shall be entitled to a hearing according to the following schedule:

(1) For persons charged with offenses under paragraphs (1) through (7) of *subsection* (a) of Section 110-6.1, the hearing shall be held within 90 days of the person's motion for reconsideration of pretrial release conditions.

(2) For persons charged with offenses under paragraph (8) of *subsection* (a) of Section 110-6.1, the hearing shall be held within 60 days of the person's motion for reconsideration of pretrial release conditions.

(3) For persons charged with all other offenses not listed in *subsection* (a) of Section 110-6.1, the hearing shall be held within 7 days of the person's motion for reconsideration of pretrial release conditions." (Emphasis added). 725 ILCS 5/110-7.5(a), (b) (West 2022). .

¶ 35    We ultimately rejected Whitmore's argument that section 110-6.1 was inapplicable to him. We discussed the legislature's use of the terms "sections" and "subsections" and, after looking at the statute as a whole, found that the legislature's intent was for "section" and "subsection" to have different meanings and for those meanings to be consistent throughout section 110-7.5. Therefore, we concluded that " '[s]ection' as used in subsection (a) refers to all of section 110-7.5 and not only to subsection (a)." *Id*. We further found that the State's section 110-6.1 petition was applicable

- 11 -

to Whitmore because "while a hearing under subsection 110-5(e) is normally compulsory, this requirement does not preclude the State's ability to seek denial of pretrial release" for "defendants who were ordered released on bond but were still detained when the Act went into effect." *Id*. ¶ 8.

¶ 36 We then addressed Whitmore's argument that the State's petition to detain under section 110-6.1 was untimely. *Id*. ¶ 10. Whitmore argued that section 110-6.1, which requires the State to file a petition to detain without notice "at the first appearance before a judge" or with notice "within the 21 calendar days *** after arrest and release ***," was clear and unambiguous and that his first appearance in court occurred on December 14, 2022, nearly a year before the State filed its petition. *Id*. (quoting 725 ILCS 5/110-6.1(c) (West 2022)). Thus, he contended that the State's petition was untimely and it was barred from seeking to detain him.

¶ 37 We refused Whitmore's interpretation of section 110-6.1 and found that the trial court did not err in hearing the State's petition. *Id.* ¶ 16. We found that the State petitioned to deny Whitmore pretrial release after Whitmore moved for relief from the financial conditions of his release. The hearing on Whitmore's motion was his first appearance before a judge after the statute was amended. The State filed its petition on the same day as the hearing and therefore the petition was filed to be heard "at the first appearance before a judge." *Id*. We found that the "[c]ode's timing requirement is meant to prevent the State from having an unlimited window in which to hail defendants into court to determine whether they should be denied pretrial release." *Id.* Therefore, the trial court did not err in hearing the State's petition to detain Whitmore. *Id.*

¶ 38 In *McDonald*, the defendant was arrested on September 2, 2020, and was ordered released on September 3, 2020, by D-Bond of $1 million but was unable to post bond and remained in custody. *McDonald*, 2024 IL App (1st) 232414, ¶ 18. After the statue was amended in September

2023, the defendant filed a petition for pretrial release under the amended statute and the State filed a pretrial detention petition under section 110-6.1. The court granted the State's petition. *Id.* ¶ 27.

¶ 39    On appeal, the defendant argued that the State's section 110-6.1 petition to detain was untimely because it was filed more than 3 years after both his arrest and the order releasing him on bail, and was filed on his second court appearance after the amended statute's effective date. *Id.* ¶ 27. This division of this court found the State's petition timely even though it was not filed on the defendant's first appearance before a judge after the amended statue became effective on September 18, 2023. We observed that without notice, the defendant filed his petition for pretrial release on October 17, 2023, which was his first appearance before a judge after the statute was amended. *Id.* ¶ 28. The State filed its petition on November 1, 2023, 14 days later. On that date, a hearing on the petitions took place. Citing *Whitmore* with approval, we concluded that:

> "defendant's filing of the pretrial release petition opened the door to proceedings dictated by the amended statute, including the State's ability to file a pretrial detention petition in response. The amended statute anticipates the proceedings to occur just after a defendant's arrest, at an initial pretrial detention hearing. However, in this case, defendant reopened the matter by filing a pretrial release petition three years after his initial bond hearing was held, thus availing himself of the benefit of the amended statute, but at the same time, he also subjected himself to the procedures dictated by the amended statute. He cannot now complain about application of the very statute he requested relief under." *Id.* ¶ 28.

¶ 40    Here, similar to the defendant in *Whitmore*, I would find that Watson was subject to the State's petition to detain under subsection 110-6.1(c)(1). *Whitmore*, 2023 IL App (1st) 231807, ¶

- 13 -

11. Watson initiated the proceedings by filing his petition for pretrial release on December 27, 2023, and the case was set for hearing on the petition on January 9, 2024. The record also shows that the circuit court granted the State leave to file its petition to detain on January 9, 2024. The hearing on both petitions took place on January 9, 2024. Thus, the State's petition to detain was not untimely as it was filed at the first appearance before a judge after Watson filed his petition indicating that he was "availing himself of the benefit of the amended statute." *McDonald*, 2024 IL App (1st) 232414, ¶ 28. Watson's prior appearances in court after the effective date of the amended act and before he filed his petition for pretrial release are not relevant to the determination of whether the State's petition was timely filed. Rather, Watson's filing of his petition for pretrial release "opened the door to proceedings dictated by the amended statute, including the State's ability to file a pretrial detention petition in response." *Id*. Because the State filed the petition for detention on the first court date after Watson filed his petition, the State's petition was not untimely and the court did not err in considering it.

¶ 41    Accordingly, by filing the petition to remove a financial condition of pretrial release, Watson initiated the proceedings under the amended statute, and the State was permitted to file a timely petition to detain in response, which it did. Thus, I would find that the court had authority to consider the State's 110-6.1 petition.

¶ 42    Finally, even if the court erred in proceeding on the State's petition to detain because it was untimely, the error was harmless. Practically speaking, the State's petition to detain is nothing more than a response in opposition to Watson's petition to remove financial conditions. As defense counsel acknowledged, once Watson made a request for a hearing under section 110-5(e), "[t]he State may make a proffer, but their proffer is for what conditions will ensure his appearance in

- 14 -

court and the safety of the community." Indeed, section 110-5(e) provides that in the event a defendant remains in custody for 48 hours after being ordered released, "the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(e) (West 2022)). In this case, the State proffered that Watson committed the detainable offense of armed habitual criminal, that he posed a real and present danger to a person or persons, as well as the community, and that no conditions could mitigate that risk. In other words, the State argued that there were no conditions that ensured Watson's appearance, the safety of any other person and the likelihood of Watson's compliance with pretrial conditions. Bail bond serves as a deterrent to flight and to protect the public (*Rowe v. Raoul*, 2023 IL 129248, ¶ 57) and before the court could remove that financial condition, it was obligated to consider the pretrial public safety assessment report completed on January 23, 2023, which indicated that Watson scored a three out of six for new criminal activity and a two out of six for failure to appear; the State's proffer; as well as argument from defense counsel requesting the least restrictive means of pretrial release before ultimately deciding to detain Watson. The court here undertook the very analysis that would have been necessary to decide Watson's petition to remove financial conditions. Thus, any error by the court in proceeding on the State's petition to detain rather than Watkin's petition to remove financial conditions was harmless where Watson does not challenge the court's findings that: (1) the proof was evident and presumption great that Watson had committed a detainable offense; (2) Watson posed a real and present threat to the safety of a person, persons, or the community; or (3) no condition or combination of conditions can mitigate the threat posed by him.

¶ 43    For the forgoing reasons, I would affirm the circuit court's judgment.