NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 241072-U

NO. 4-24-1072

IN THE APPELLATE COURT

FILED
November 15, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| MICHAEL R. TAYMAN, | ) | No. 24CF355 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court did not abuse its discretion in denying defendant's pretrial release.

¶ 2    Defendant, Michael R. Tayman, appeals the trial court's order denying his motion for relief from pretrial detention pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq.*) (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In May 2024, defendant was charged by information with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2022)), alleging he committed an act of sexual penetration upon E.T. (born May 2021) by inserting anal beads into E.T.'s anus.

Defendant was subsequently indicted by a grand jury for the same offense. The State filed a petition to deny defendant's pretrial release. A hearing on the State's petition was held in May 2024.

¶ 5        At the detention hearing, the State requested the trial court take judicial notice of the charging document, the affidavit of probable cause, and the pretrial services bond report. The affidavit of probable cause noted the East Peoria Police Department was contacted by the Illinois Department of Children and Family Services (DCFS) regarding a suspected child sexual abuse case. Defendant had told medical personnel that when he arrived home from work on October 20, 2023, E.T. was behaving normally. He said E.T. had a " 'larger than normal' bowel movement that night and that he had wiped her clean and put her to bed." The following morning, on October 21, E.T. had a temperature, for which defendant gave her Motrin. Defendant said E.T. began throwing up a "brown substance" that evening. Defendant took E.T. to the hospital, where she was diagnosed with a perforated bowel, which had caused sepsis. She underwent emergency surgery to repair the bowel perforation, which resulted in the requirement of the placement of a colostomy bag. She remained in the pediatric intensive care unit in critical condition. The affidavit also noted E.T. had a "crescent shaped bruise" on the center of her back. E.T. was evaluated by child abuse pediatrician, Dr. Shilpa Hari, who found E.T.'s injuries "consistent with a foreign object being inserted into E.T.'s rectum."

¶ 6        E.T.'s mother and defendant's then-wife, Ariel Tayman, spoke with Detective Bob Vester. Ariel confirmed defendant had been home alone with their three children, which included E.T., on the evening of October 20, 2023. On the morning of October 21, 2023, E.T. had a fever. That evening, she took the other two children to a haunted house when she received a call from defendant stating E.T. was vomiting. When Ariel arrived home, defendant was in the

shower with E.T., stating he wanted clean her up. E.T. was "not walking into the shower as usual but had to be held and handed to defendant in the shower." Ariel described observing E.T. to have a "dark/black colored diarrhea." Ariel was unaware E.T. suffered from constipation, but recalled defendant previously telling her E.T. had a large bowel movement that caused a tear to her rectum, which had healed on its own. Ariel recalled receiving a phone call from defendant, who was at the hospital with E.T., stating E.T.'s "medical condition was declining, and the medical team was doubtful she would survive through the night."

¶ 7    Police executed a search warrant of defendant's home. A "large bin of sex toys" was recovered. "Vester located long silicone anal beads which were purple in color and had visible bodily fluid on the beads." Testing revealed E.T.'s DNA on the bottom beads and defendant's DNA on the top portion of the beads, along with the handle.

¶ 8    The State also requested the trial court take judicial notice of the Tazewell County juvenile abuse and neglect cases related to defendant, E.T., and his two other children. The State proffered defendant had not cooperated with DCFS for court-ordered services during the pendency of those proceedings. During a video visit with E.T., she began crying "at the sight of the defendant and hearing the defendant say, hi, baby girl, hi baby." Following this incident, visitation was suspended between E.T. and defendant. DNA testing by the Illinois State Police Crime Lab revealed "fecal matter or bodily fluid" DNA of E.T., Ariel, and defendant on the beads of the sex toy. Defendant's "touch" DNA was found on the upper beads and the handle. While at the hospital, defendant voluntarily raised the issue of sexual assault to medical personnel and denied he could have committed such actions. Finally, a pediatric surgeon noted a foreign object approximately six to eight inches in length could have caused the perforation.

Detective Vester measured the portion of the anal beads consisting of DNA to be six to eight inches in length.

¶ 9    Defendant proffered his now ex-wife, Ariel, had "a history of deviant sexual desires and admitted conduct perhaps rising to the level of pedophilia or other paraphilia." Ariel had previously stated "anything can be used as a sex toy if you're brave enough." Ariel had admitted in November 2023 to "possession" of the sex toy that could have been used on E.T. Ariel stated the sex toy was last used by her and defendant in September 2023. In December 2023, Ariel sent "sexually intimate incest text" messages to other family members. Defendant admitted he had failed to cooperate with DCFS, but such conduct was at the advice of counsel. Additionally, defendant had no history of substance abuse, no prior criminal history, and always appeared in court, and pretrial services had noted he scored low on the Virginia Pretrial Risk Assessment Instrument-Revised.

¶ 10    The trial court noted it had considered the pretrial services bond report, affidavit of probable cause, evidence proffered, and statutory factors when making its decision. The court found the proof was evident or presumption great defendant had committed the qualifying offense. The court recognized both Ariel and defendant's DNA was on the anal beads, but noted defendant had access to E.T. at the time the injury appeared to have occurred. Furthermore, defendant correlating the injury with a bowel movement but later postulating abuse "doesn't make sense" and went against defendant's version of events. The court also noted the "actions of the shower and other incidents" also supported its finding. Additionally, only defendant's "touch" DNA was located on the anal beads.

¶ 11    We note the trial court found detention was appropriate under both the dangerousness and the willful flight standards. However, the willful flight issue was later

withdrawn. The court found defendant presented a real and present threat to the safety of any person or persons or the community. In its written order, the court noted the violent nature of the offense, the sexual nature of the offense, the identity of those to whom defendant posed a threat, the nature of the threat, and the age and physical condition of the victim or complaining witness. The court also wrote, "Level of Insertion, Nature of Injury, Parental relationship unique [and] articulable nature facts of case."

¶ 12 In July 2024, defendant filed a motion for relief, arguing the trial court erred when it denied his pretrial release because (1) the proffered DNA evidence did not establish the proof was evident or presumption great defendant had committed the alleged offense, (2) the limited access to his children through DCFS-supervised visits eliminates any pretrial risk he poses, and (3) electronic monitoring would mitigate any risk or threat to safety the defendant posed to others. The matter proceeded to a hearing in August 2024. Defendant conceded there was no new evidence to be considered in his motion for relief.

¶ 13 The trial court noted the DNA evidence and the nature and circumstance of the offense. The court recognized defendant's "lack of a significant criminal history" and DCFS's involvement as mitigating factors but noted the peculiar facts of the case. Specifically, the age of E.T., the weight of the evidence, the nature and circumstances of the offense, the foreign object used, and the injury to E.T. supported the court's detention order. The court denied defendant's motion for relief.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, defendant argues the trial court abused its discretion when it denied his motion for relief because (1) the evidence was insufficient to show he posed a threat to any

person or persons or the community and (2) the court failed to conduct an individualized assessment to support its detention decision. We address each claim in turn.

¶ 17    We review a trial court's decision to deny pretrial release for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. A court abuses its discretion by issuing a decision that is arbitrary, fanciful, or unreasonable—that is, a decision with which no reasonable person would agree. *Id.* ¶ 10. The Code requires the State prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Additionally, section 110-6.1(g) requires the trial court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation. *Id.* § 110-6.1(g).

¶ 18    A. Real and Present Threat Claim

¶ 19    Defendant first argues there was no evidence proffered that he has access to his children, or any children for that matter. Additionally, he points to case law for the proposition that the nature of the charge against him is insufficient to establish dangerousness. See *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18; *People v. Finch*, 2023 IL App (2d) 230381-U, ¶ 19.

¶ 20    We agree with defendant that "the fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that the defendant poses a threat to public safety." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. However, there was more offered by the State and observed by the trial court than the bare allegations from the charging document. Even though E.T. was vomiting and had blood-tinged diarrhea, defendant sought to

"clean her up" before seeking medical care. The evidence showed defendant waited until the very last moment to bring E.T. to the hospital. This was further supported by the emergency nature with which the medical team needed to act to save E.T.'s life once she was hospitalized. Defendant reportedly sought to yet again blame E.T.'s rectal bleeding on a large bowel movement, only to later volunteer his own denial of any sexual assault to hospital staff. The fact that defendant's children no longer live with him does not alone eliminate any danger he poses. Indeed, defendant notes from the pretrial services bond report that his ex-wife, Ariel, has an order of protection against him, despite the fact that they no longer live together. Under the same logic defendant pursues here, the order of protection is unnecessary because he and Ariel no longer live together, but place of residence is not the determinative factor for deciding whether someone is a danger to another. We are simply unpersuaded by defendant's contention here that he posed no danger to any person or persons or the community. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (noting the appellant bears the burden of persuasion as to his or her claims of error).

¶ 21                          B. Less Restrictive Conditions Claim

¶ 22          Defendant next argues the trial court failed to conduct an individualized assessment of why less restrictive conditions of pretrial release would not have mitigated any threat he posed. Defendant cites *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, and *People v. McDonald*, 2024 IL App (1st) 232414, in support.

¶ 23          In *Martinez-Ortiz*, the defendant abused a position of trust and confidence by sexually assaulting his granddaughter. *Martinez-Ortiz*, 2024 IL App (2d) 240102-U ¶ 28. Once the allegations came to light, the defendant lost access to the victim. *Id.* The defendant had no prior criminal history, and there was no evidence of prior failures to comply with court-ordered

- 7 -

conditions. *Id.* ¶ 29. Furthermore, there had been no new allegations against the defendant in the three years since the alleged offenses occurred. *Id.* The appellate court reversed, finding the trial court erred when it determined there were no set of conditions that could mitigate any threat the defendant posed. *Id.* ¶ 24. The court noted there was no direct evidence the defendant posed a danger to other children, had previously engaged in sexual misconduct, had a prior criminal history or subsequent allegations, or was in a position of trust and confidence with another minor. *Id.* ¶ 32.

¶ 24        In *McDonald*, the defendant was caring for his infant child alone when he reported finding the child unresponsive. *McDonald*, 2024 IL App (1st) 232414, ¶ 4. The child died from injuries related to brain and head trauma, radius and ulna fractures, and retinal hemorrhaging. *Id.* ¶ 5. The child's death was ruled to be a homicide caused by child abuse. *Id.* The defendant was charged in September 2020 with, *inter alia*, first degree murder. *Id.* At the time of his arrest, the defendant was given a monetary bond but remained in custody due to his inability to post the bond. *Id.* ¶ 7. After the Act took effect, the defendant sought pretrial release, and the State filed a petition to deny his pretrial release. *Id.* ¶ 8. The trial court denied the defendant's pretrial release. *Id.* ¶ 12. When reversing the trial court, the appellate court stated:

"We find *** the trial court's findings to be against the manifest weight of the evidence in this case. Defendant is a 40-year-old, who has no criminal background, who has been continuously employed since graduating high school, who was working as a security guard at the time of the offense, who lives next door to his mother and brother, and who served as a church deacon. He has no other children, and there is no indication

- 8 -

defendant will be exposed to or responsible for the care of other children in his day-to-day life. Furthermore, defendant's actions after finding his child unresponsive do not support a finding that he is a safety threat; when he realized the infant was not responsive, he called his mother, a registered nurse, to the apartment to perform [cardiopulmonary resuscitation]. Last but not least, we observe that, three years earlier under less lenient laws than those that exist now, the trial court found defendant sufficiently safe for release on bond with conditions, and the State does not allege that the facts have changed in the intervening years while defendant has been in custody." *Id.* ¶ 40.

¶ 25    We find both *Martinez-Ortiz* and *McDonald* distinguishable from the instant case. The primary distinction is neither of the defendants in the cited cases provided reasons for the respective trial courts to think they would not follow any court-ordered conditions of release. In the instant matter, defendant admittedly failed to comply with court-ordered conditions in the related juvenile cases. As the trial court noted in its initial detention decision, there were no conditions pretrial services could impose to ensure his compliance because defendant had not cooperated with the juvenile court or DCFS. The trial court then went on to mention Fourth District case law to note the peculiar facts of this case make it difficult to predict whether defendant would comply with court orders, given the nature of the offense and its attendant circumstances depart from the basic expectations of civil society.

¶ 26    This court, in *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20, stated:

"Ultimately, the evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders—or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release under the Act does not obligate a trial court to release such a defendant in the hopes that his otherwise spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence."

¶ 27 We stand by our sentiment from *Romine* and find it very applicable in the case at bar. As a reviewing court, "we are not reviewing the State's evidence anew. Instead, we are reviewing the circuit court's evaluation of that evidence for an abuse of discretion." *Inman*, 2023 IL App (4th) 230864, ¶ 11. Under an abuse of discretion standard, we will not substitute our own judgment for that of the trial court simply because we would have analyzed the proper factors differently. *Id.*

¶ 28 As we discussed above, defendant is alleged to have sexually assaulted his own two-year-old child with a sex toy that caused a perforation to her bowels, resulting in sepsis so severe that she nearly died. Defendant was worried about cleaning her up rather than seeking immediate medical care. Defendant sought to attribute the condition to a large bowel movement, which he appears to have previously used as an excuse for E.T.'s prior rectal bleeding. He volunteered his own innocence to hospital staff, stating that he had not sexually abused her. These facts, indeed, signify a grave departure from the basic expectations of civil society.

Coupled with defendant's failure to cooperate with DCFS and the juvenile court regarding E.T. and his two other children, these facts only compound the trial court's task of predicting whether any set of conditions would mitigate the threat defendant could pose to E.T., his other children, or even the community at large. As a reviewing court, we must be mindful that we are reviewing a cold record, whereas the trial court's superior position allows it to associate the facts of each case with the demeanor of the parties involved. For the trial court to abuse its discretion in this case, it must be a decision with which no reasonable person would agree. We find the trial court's decision that no set of conditions of pretrial release could mitigate the real and present threat defendant posed was within the bounds of reason. See *Romine*, 2024 IL App (4th) 240321, ¶ 23. Accordingly, we find the court did not abuse its discretion in denying defendant's pretrial release under a dangerousness standard. *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 29                                    III. CONCLUSION

¶ 30            For the reasons stated, we affirm the trial court's judgment.

¶ 31            Affirmed.